MORGAN, LEWIS & BOCKIUS LLP
Melinda S. Riechert, Bar No. 65504
mreichert@morganlewis.com
Caitlin V. May, Bar No. 293141
cmay@morganlewis.com
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA  94306
Tel:   +1.650.843.4000
Fax:   +1.650.843.4001

Kathryn T. McGuigan, Bar No. 232112
kmcguigan@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:   +1.213.612.2500
Fax:   +1.213.612.2501

Attorneys for Defendants
TE CONNECTIVITY NETWORKS, INC. and TYCO ELECTRONICS CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALE WILSON, on behalf of himself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>vs.<br><br>TE CONNECTIVITY NETWORKS, INC.; a Minnesota Corporation; TYCO ELECTRONICS CORPORATION, a Pennsylvania Corporation, and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 3:14-cv-4872<br><br>**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT OF THE NORTHERN DISTRICT OF CALIFORNIA**<br><br>[State Complaint Case No. 530714]<br><br>**[28 U.S.C. §§ 1332, 1441, 1446, and 1453]** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 25379360.1

NOTICE OF REMOVAL

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF DALE WILSON AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant Tyco Electronics Corporation ("Tyco") hereby removes the above-entitled action from the Superior Court of the State of California, County of San Mateo, to the United States District Court for the Northern District of California. This Court has original subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453, because minimum diversity exists and the amount in controversy exceeds $5 million.

In support of this removal, Tyco states the following:

## I.   PLEADINGS, PROCESS, AND ORDERS

1. On October 1, 2014, Plaintiff Dale Wilson filed an unverified complaint in the Superior Court of the State of California, for the County of San Mateo, entitled *Dale Wilson, on behalf of himself, all others similarly situated, and the general public v. TE Connectivity Networks, Inc..; a Minnesota Corporation; Tyco Electronics Corporation, a Pennsylvania Corporation, and DOES 1-50, inclusive*, Case No. 530714 ("Complaint"). The Complaint alleges seven causes of action: (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to pay hourly and overtime wages; (4) failure to provide accurate written wage statements; (5) failure to timely pay all final wages; (6) unfair competition (Business & Professions Code §§ 17200, *et seq*.; and (7) civil penalties under the Private Attorneys General Act ("PAGA") (Labor Code §§ 2698, *et seq*.) (Complaint, ¶¶ 19-100).

2. Plaintiff's Complaint was served on Defendants Tyco and TE Connectivity Networks, Inc. ("TE") on October 2, 2014. True and correct copies of the Summons, Plaintiff's Complaint, and all documents served with the Complaint are attached as **Exhibit A**.

3. On October 31, 2014, Tyco and TE filed and served this Answer to the Complaint. A true and correct copy of the Answer to the Complaint is attached as **Exhibit B**.

4. **Exhibits A and B** constitute all the pleadings, process, and orders served upon or by Tyco in the Superior Court action.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 25379360.1

1   NOTICE OF REMOVAL

## II.  THE REMOVAL IS TIMELY

5. This Notice of Removal is filed timely, pursuant to 28 U.S.C. section 1446(b), because it is being filed within thirty (30) days of completion of service on Defendants TE and Tyco. No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III.  DIVERSITY JURISDICTION EXISTS

### A.  The Court Has Original Subject Matter Jurisdiction Under CAFA.

6. This lawsuit is a civil action within the meaning of the Acts of Congress relating to removal of class actions. *See* 28 U.S.C. § 1453.

7. This action is brought by a putative representative person on behalf of a proposed class of more than 100 individuals. (Complaint, ¶ 13). As such, this matter is a "purported class action" as that term is defined pursuant to CAFA.

8. The Complaint could have been filed in this Court under 28 U.S.C. § 1332(d) because this matter is brought as a class action under California Code of Civil Procedure § 382, diversity of citizenship exists between one or more members of the putative class and Tyco, and, accepting only for the purposes of this removal, Plaintiff's allegations, the amount in controversy exceeds, in the aggregate, $5,000,000, exclusive of interests and costs. Removal is therefore proper pursuant to 28 U.S.C. §§ 1446, and 1453.[1]

### B.  Diversity of Citizenship Exists.

9. In order to satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists, that is, that one putative class member is a citizen of a state different from that of one defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity

---

[1] Tyco does not concede and reserves the right to contest at the appropriate time, Plaintiff's allegations that this action can properly proceed as a class action and/or representative action. Tyco further does not concede that any of Plaintiff's allegations constitute a cause of action under applicable California law.

requirement set forth in 28 U.S.C. § 1332(d)(2)). Plaintiff is a citizen of California. Defendants TE and Tyco are citizens of Minnesota and Pennsylvania, respectively, as Plaintiff alleges in the Complaint. (Complaint, ¶ 1). Thus, minimal diversity exists and removal is proper.

     **a.**   **Plaintiff and Members of the Putative Class Are Citizens of California.**

  10.   "An individual is a citizen of the state in which he is domiciled . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). Plaintiff alleges he worked for Defendants from approximately 1975 to 2013. (Complaint ¶ 5). Plaintiff was employed by Tyco from approximately 1978 to 2013. (Declaration of Lynne Pereira ("Pereira Decl."), ¶4). Plaintiff provided Tyco with information indicating that his permanent residence and domicile is and was within the State of California. (*Id.* at ¶ 5,6). For example, Plaintiff completed an employment application on October 18, 1978 in which he stated that his home address was in Redwood City, California. (*Id.* at ¶ 5). He also completed a Form W-4 in 1997, which stated his home address was in Redwood City, California. (*Id.* at ¶ 6). There is no indication that Plaintiff is or has been a citizen of Pennsylvania. Thereafter, until his employment terminated in 2013, Plaintiff never advised Tyco that he had changed his address or moved out of California. (*Id*. at ¶ 6).

  11.   Evidence of continuing residence creates a presumption of domicile. *Washington v. Hovensa LLC*, 652 F.3d 340, 345 (3rd Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994). Once the removing party produces evidence supporting that presumption, the burden shifts to the other party to come forward with contrary evidence, if any, in order to dispute domicile. *Id*.

     **b.**   **Defendant Tyco Electronics Corporation is A Citizen of Pennsylvania.**

  12.   For diversity purposes, a corporation is deemed to be a citizen of any state in which it has been incorporated and of any state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 25379360.1

3    NOTICE OF REMOVAL

13. Tyco is now and, at the time this action commenced on October 1, 2014, a corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania. (Pereiera Decl., ¶11). At all times relevant to this lawsuit, Tyco has had its corporate headquarters and principal place of business in the Commonwealth of Pennsylvania. (*Id*. at ¶12). The Pennsylvania headquarters are and, at all times relevant, have been the place where the majority of Tyco's corporate books and records are located and where the majority of its executive and administrative functions (including but not limited to operations, corporate finance, accounting, human resources, payroll, marketing, legal, and information systems) are and have been performed. (*Id*.) The majority of Tyco's corporate executives (including but not limited to its president, chief financial officer, and corporate secretary) are and, at all times relevant, have been located in the Commonwealth of Pennsylvania. (*Id*. at ¶13). In addition, Tyco's corporate activities are and, at all times relevant, have been directed, controlled, and coordinated from there. (*Id*.) *See generally Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010) (the "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities… in practice it should normally be the place where the corporation maintains its headquarters-provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings").

14. At all relevant times, Tyco has not been incorporated in California and has not had its headquarters, executive offices, or officers based in California. (Pereiera Decl., ¶ 14).

15. Thus, Tyco is *not* now and was *not* at the time of the filing of the Complaint in this action, a citizen of the State of California within the meaning of the Acts of Congress relating to the removal of cause. Tyco is now and has been since this action commenced on October 2, 2014, a citizen of the Commonwealth of Pennsylvania. 28 U.S.C. § 1332(c)(1).

    c.    **Doe Defendants Are Irrelevant for Purposes of Removal**

16. The citizenship of "Doe" defendants is disregarded for removal purposes. 28 U.S.C. § 1441(b)(1); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998)

(holding that for removal purposes, the citizenship of defendants sued under fictitious names shall be disregarded); *see also Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002). Thus, the inclusion of "Doe" defendants in Plaintiff's Complaint has no effect on Defendants' ability to remove. *See also, Braud v. Transp. Serv. Co.*, 445 F.3d 801, 808 (5th Cir. 2006) ("[t]he language of CAFA is plain that any single defendant can remove (without the consent of other defendants) the entire class action (not merely the claims of the defendant)").

17. Based on the Complaint, therefore, at least one member of the putative class is a citizen of a state different from one or more Defendants, as Plaintiff is a citizen of California and Defendant Tyco is a citizen of Pennsylvania. *See* 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any defendant").[2]

18. Accordingly, the requirements for diversity jurisdiction are met because Plaintiff and Tyco are citizens of different states.

### C. Class Size

19. CAFA's requirement that proposed class membership be no less than 100 (28 U.S.C. §1332(d)(5)) is satisfied here because the putative class has more than 100 members.

20. Plaintiff seeks to represent all of Tyco's non-exempt employees who worked during the" time period beginning four years prior to the filing of the action until judgment is rendered" in six separate "liability" classes. (Complaint, ¶11). Tyco's records show that between October 1, 2010 and October 13, 2014, 1,952 non-exempt employees were or are employed by Tyco[3] in California. (Pereira Decl., ¶7).

---

[2] Although not required for removal under CAFA, Plaintiff alleges that defendant TE Connectivity Networks, Inc. is a Minnesota corporation, and he does not allege that it is a California citizen.
[3] Defendant TE Connectivity Networks Inc. was not Plaintiff's employer and Tyco contends is not a proper defendant. (Pereira Decl.,¶4). For those reasons, no data concerning TE's employers is included in the amount in controversy analysis.

### D. The Amount-in-Controversy Requirement Is Satisfied.

21. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(6).

22. In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Report, S. REP. 109-14, at 42.

23. The proper burden of proof for Tyco to establish the amount in controversy is the preponderance of the evidence standard. *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1348 (2013); *Rodriguez v. AT&T Mobility Servs.,* 728 F.3d 975, 981-82 (9th Cir. 2013). Under this standard, Tyco need only show that it is "more likely than not" that the amount in controversy exceeds the jurisdictional threshold. "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Rippee v. Boston Market Corp.,* 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)). This burden "is not 'daunting,' as courts recognize that under this standard, a removing defendant is not obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Korn*, 536 F. Supp. 2d at 1204-05. In cases where statutory penalties are sought, "courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met." *Id.* at 1205.

24. Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the applicability of CAFA should be resolved in favor of federal jurisdiction. *See, e.g.*, S. REP. 109-14, at 42 ("If a federal court is uncertain about whether 'all matters in controversy' in a purported class action do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case."); *id.* at 43 ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 25379360.1

6    NOTICE OF REMOVAL

that interstate class actions should be heard in a federal court if properly removed by any defendant.")

25.     In assessing the amount in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. Mar. 8, 2012) (citing *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). In *Vitran,* the court held that it was proper for a defendant in a putative wage and hour class action to establish the amount in controversy requirement for purposes of CAFA by assuming a minimum number of meal and rest period violations per class member per pay period. 471 Fed. App. at 648. Noting that the plaintiffs alleged that their claims were "typical" of the other 156 putative class members, the Court also found it proper to multiply the plaintiff's claimed damages by the number of putative class members in order to meet the amount in controversy requirement. *Id.* at 649.

26.     While Tyco denies Plaintiff's factual allegations and denies that he or the putative classes he purports to represent are entitled to any of the relief for which Plaintiff has prayed, it is clear that, when the maximum potential value of the claims of Plaintiff and the putative class members are aggregated, the allegations within Plaintiff's Complaint "more likely than not" put into controversy an amount in excess of $5 million.[4] *Rhoades v. Progressive Casualty Ins., Co.*, 410 Fed. Appx. 10, 11 (9th Cir. Nov. 23, 2010) ("'[o]nce the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, ... then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much'"), quoting *Lewis v. Verizon Communications Inc.*, 2010 WL 4645465, 4 (9th Cir. 2010).

---

[4] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint. Tyco's references to specific damage amounts and its citation to comparable cases are provided solely for the purpose of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Tyco maintains that each of Plaintiff's claims is without merit and that Tyco is not liable to Plaintiff or any putative class member. In addition, Tyco denies that liability or damages can be established on a class wide basis. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

7      NOTICE OF REMOVAL

DB2/ 25379360.1

### a. The Amount In Controversy Exceeds $5,000,000

27. Although Tyco denies (a) Plaintiff's allegations and theories of maximum recovery as to meal and rest break premiums, overtime, waiting time penalties, wage statement penalties, PAGA penalties, attorneys' fees, costs, interest, and any other damages; (b) that Plaintiff can establish the requirements of Rule 23, including but not limited to demonstrating the feasibility of accurately calculating any actual claimed damages and related penalties for each claim because of the individualized nature of any damages sought; and (c) that Plaintiff or the putative class Plaintiff purports to represent are entitled to any of the relief for which he has prayed. However, based on Plaintiff's allegations, the amount in controversy associated with Plaintiff's claims based on Plaintiff's allegations exceeds the $5,000,000.00 threshold set forth under 28 U.S.C. Section 1332(d)(2).

28. Plaintiff alleges six putative classes: (1) Auto Deduct Class; (2) Meal Break Class; (3) Rest Break Class; (4) Wage Statement Penalties Class; (5) Waiting Time Penalties Class; and (6) UCL (Unfair Competition Law) class. (Complaint, ¶ 11).

29. For the Auto Deduct, Meal Break, Rest Break, and UCL Classes, Plaintiff defines the classes such that they implicate "[a]ll persons in non-exempt positions employed by Defendants in California." (Complaint, ¶ 11). Plaintiff defines the class period for these four classes as "the time period beginning four years prior to the filing of this action until judgment is entered." (*Id.* at ¶¶ 10 and 11). From October 1, 2010 (four years preceding the filing of this action) through October 13, 2014, Tyco employed approximately 1,952 individuals in non-exempt positions in California for approximately 291,203.71 work weeks. (Pereira Decl., ¶ 7). The average wage of these employees is $20.34/hour. (*Id.*)

30. For the Wage Statement Penalties Class, Plaintiff defines the Class as "[a]ll Auto Deduct Class, Meal Break Class, and Rest Break Class members employed by Defendants in California during the period beginning one year before the filing of this action and ending when final judgment is entered." (Complaint, ¶ 11). From October 1, 2013 (one year preceding the filing of this action) through October 13, 2014, Tyco employed approximately 1,483 individuals in non-exempt positions in California, for a total of 34,079 pay periods. (Pereira Decl., ¶ 8).

31. For the Waiting Time Penalty Class, Plaintiff defines the Class as "[a]ll Auto Deduct Class, Meal Break Class, and Rest Break Class members who separated from their employment with Defendants during the period beginning three years before the filing of this action and ending when final judgment is entered." (Complaint, ¶ 11). From October 1, 2011 (three years preceding the filing of this action) through October 13, 2014, approximately 595 individuals in non-exempt positions in California separated their employment from Tyco. (Pereira Decl., ¶9). During the same period, the 595 putative class members who separated from employment with Tyco were paid an average hourly wage of $20.57/hour. (*Id*.)

           d. **Plaintiff's Meal Period And Rest Period Claims Place At Least $11,846,166.92 in Controversy.**

32. In his First and Second Causes of Action, Plaintiff alleges that the Defendants failed to provide meal periods and rest periods. (Complaint, ¶¶ 19-41). In support of his meal period claim, Plaintiff alleges that "Defendants maintained a policy or practice of automatically deducting one half hour from the paychecks of Auto Deduct Class members on each day they worked for a meal period, regardless of whether or not they were able to take an uninterrupted, thirty (30) minute meal period." (Complaint, ¶ 27). Plaintiff further alleges that "[a]t all relevant times, Defendants failed to pay Plaintiff and Meal Break Class members additional premium wages, and/or were not paid premium wages at the employees' regular rates of pay when required meal periods were not provided pursuant to California law." (*Id*. at ¶ 28). On behalf of putative class members, Plaintiff seeks to "recover unpaid premium wages."

33. In support of his rest period claim, Plaintiff alleges that "Defendants maintained a policy or practice of not providing members of the Rest Break Class with net rest periods of at least ten (10) minutes for each four (4) hour work period, or major portion thereof, as required by the Wage Order." (Complaint, ¶ 37). Plaintiff further alleges that "Defendants failed to pay Plaintiff and other class members additional premium wages when required rest periods were not provided." (*Id*. at ¶ 38). On behalf of putative class members, Plaintiff seeks to "recover unpaid premium wages." (*Id*. at ¶ 40).

34. As discussed above, Tyco employed approximately 1,952 individuals in non-exempt positions in California for approximately 291,203.71 work weeks in the applicable four-year period from October 1, 2010 to October 13, 2014. (Pereira Decl., ¶7). The average hourly wage of those employees was $20.34. (*Id*.) Based upon Plaintiff's allegation that Tyco maintained a policy or practice of not providing its employees with meal and rest periods and did not pay any of them premium pay as a result, Tyco makes the conservative assumption that Plaintiff seeks at least two hours of premium pay per putative class member per workweek (one hour of premium pay for an alleged missed meal period and one hour of premium pay for alleged missed rest period per work week). As such, the amount in controversy as to the meal period and rest period claims based on Plaintiff's allegations is approximately **$11,846,166.92** ($20.34 average hourly rate x 2 hours of premium pay per work week x 291,203.71 work weeks = $11,846,166.92).

e. **Plaintiff's Overtime Claim Places Approximately $4,442,312.60 In Controversy.**

35. In his Third Cause of Action, Plaintiff alleges that "Defendants have failed [] to pay hourly wages to Auto Deduct Class members for all time worked, including, but not limited to, overtime work, . . . by suffering or permitting them to work during unpaid meal periods." (Complaint, ¶ 60).

36. As discussed above, Tyco employed approximately 1,952 individuals in non-exempt positions in California for approximately 291,203.71 work weeks in the applicable four-year period from October 1, 2010 to October 13, 2014. (Pereira Decl., ¶7). The average hourly wage of those employees was $20.34. (*Id*.) Under Plaintiff's theory of liability, it is reasonable to assume that putative class members were allegedly denied 0.5 hour of overtime pay per week where one meal period was missed. As such, the amount in controversy as to the overtime claim is approximately **$4,442,312.60** ($20.34 average hourly rate x 0.5 x 1.5 x 291,203.71 work weeks = $4,442,312.60.

### f. Plaintiff's Wage Statement Penalties Claim Places Approximately $3,333,750.00 In Controversy.

37.  In his Fourth Cause of Action, Plaintiff alleges that Defendants have failed to provide putative class members with accurate written wage statements in violation of Labor Code § 226(a). (Complaint, ¶¶ 63-64). On behalf of the putative class, Plaintiff seeks penalties pursuant to Labor Code § 226(e). *Id*. at ¶ 67. Labor Code § 226(e) provides that the wage statement penalty is "fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)."

38.  As discussed above, Tyco employed approximately 1,483 putative Wage Statement Class members in the applicable one-year period for a total of 34,079 pay periods. (Pereira Decl., ¶8). As such, the amount of wage statement penalties in controversy, under Plaintiff's theory of liability, is approximately **$3,333,750.00** ((1,483 total initial pay periods x $50 for the first pay period) + (32,596 total subsequent pay periods x $100 per pay period ) = $3,333,750.00).

### g. Plaintiff's Waiting Time Penalties Claim Places Approximately $2,937,396.00 In Controversy.

39.  In his Fifth Cause of Action, Plaintiff alleges that Defendants have "maintained a policy or practice" of failing to timely pay putative class members all final wages. (Complaint, ¶¶ 74-75). Specifically, Plaintiff's Complaint alleges that "Defendants' failures to timely pay all final wages . . . have been willful . . . ." (*Id*. at ¶ 76). On behalf of the putative class, Plaintiff seeks waiting time penalties pursuant to Labor Code § 203 "from the dates that their final wages have first become due until paid, up to a maximum of 30 days." (*Id*. at ¶ 77).

40.  As discussed above, approximately 595 individuals in non-exempt positions in California have separated from employment with Tyco in the applicable three-year period. (Pereira Decl., ¶9). The average wage paid to these individuals in the same three-year period was $20.57/hour. As such, the amount of waiting time penalties at issue, based on Plaintiff's allegations, is approximately **$2,937,396.00** (595 formerly employed putative class members x $20.57/hour x 8 hours per day x 30 days = $2,937,396.00).

### h. The Complaint Also Seeks Recovery Of Attorneys' Fees And Other Damages

41. Plaintiff seeks to recover attorneys' fees. (Complaint, Prayer for Relief). Attorneys' fees are properly included in determining the amount in controversy. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007); *Sanchez v. Wal-Mart Stores, Inc.*, No. Civ. S-06-cv-2573 DFL KJM, 2007 WL 1345706, at *2 (E.D. Cal. May 8, 2007) ("[a]ttorney's fees, if authorized by statute or contract, are also part of the calculation"); *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1034 (N.D. Cal. 2002) ("[a]ttorneys' fees may be included in the amount in controversy if recoverable by statute or contract").

42. If Plaintiff prevails in this action, he can be awarded attorneys' fees in prosecuting the Business and Professions Code § 17200 claim and his PAGA claim. *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 578 (2004).[5] Those fees, whether discretionary or mandatory, must be included in the amount in controversy analysis. *Simmons*, 209 F. Supp. 2d at 1155-56. The attorneys' fees considered are not just those incurred as of the removal date. Rather "[s]uch fees necessarily accrue until the action is resolved." *Id*. at 1034; *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1010-11 (N.D. Cal. 2002) (amount in controversy includes "a reasonable estimate of [attorneys'] fees likely to be incurred" through the lawsuit's conclusion.) "[A] reasonable, informed estimation of fees, based on the various tasks to be accomplished by both sides, and the hourly rates of the attorneys who will conduct those tasks (including future attorneys' fees) properly comprise the evidence that can and should be considered in evaluating the amount in controversy for jurisdictional purposes." *Roe v. Teletech Customer Care Mgmt*. (Colorado), LLC, 2007 U.S. Dist. LEXIS 41112 (W.D. Wash. 2007).

43. Although Tyco denies that Plaintiff is entitled to attorneys' fees, for purposes of removal, the Ninth Circuit uses a benchmark rate of 25 percent of the potential damages as the amount of attorneys' fees in class action cases. *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (benchmark for attorneys' fees is 25% of the common fund).

---

[5] Attorneys' fees are not available for the meal and rest break claims. See *Kirby v. Imoos,* 53 Cal. 4th 1244 (2012) (claims for violations of the rest break and meal period statute do not provide a basis for an award of statutory attorney fees).

44. The amount in controversy for Plaintiff's overtime claim is approximately **$4,442,312.60,** the amount in controversy for Plaintiff's wage statement claim is approximately **$3,333,750.00,** and the amount in controversy for Plaintiff's waiting time penalties claim is approximately **$2,937,396.00**. Thus, the amount in controversy based on Plaintiff's Third, Fourth and Fifth Causes of Action is **$10,713,458.60**. An award of attorneys' fees based upon 25 percent of such amount would increase the amount in controversy by an additional **$2,678,364.65** (25 percent of **$10,713,458.60**).

45. In addition, Plaintiff also seeks recovery for himself and all putative class members for unpaid hourly wages. (Complaint, ¶¶ 42-61). Plaintiff also seeks PAGA penalties. (*Id.* at ¶¶ 94-100). These claims further increase the amount in controversy under CAFA.

        **i.    For CAFA Purposes, the Amount in Controversy Exceeds $5,000,000.**

46. Thus, although Tyco denies Plaintiff's allegations and theories of maximum recovery, denies that he or the putative class he purports to represent are entitled to any of the relief for which he has prayed, and expressly reserves all its defenses, based on Plaintiff's allegations, the amount in controversy, inclusive of damages, penalties and attorneys' fees is **$25,237,990.17** [($11,846,166.92 for meal and rest break premiums) + ($4,442,312.60 overtime) + ($3,333,750.00 for wage statement violations) + ($2,937,396.00 for waiting time penalties) + ($2,678,364.65 for attorneys' fees)], and exceeds the $5,000,000 threshold set forth under 28 U.SC. §1332(d)(2).

### IV.    THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

47. Venue lies in the Northern District of California pursuant to 28 U.S.C. § 1441(a), 1446(a) and 84(a). This action was originally brought in the Superior Court of the State of California, County of San Mateo and arises in part out of Plaintiff's employment in San Mateo County. (Complaint, ¶ 1). Therefore, this is the appropriate Court for removal.

48. Pursuant to Local Rule 3-2(d), removal and assignment to the San Francisco Division or the Oakland Division of this Court is proper because the alleged acts and occurrences arose in San Mateo County.

49.     Tyco is not required to obtain the consent of all other defendants to remove this action under CAFA.  28 U.S.C. § 1453(b); *United Steel v. Shell Oil Co.*, 549 F.3d 1204, 1208 (9th Cir. 2008).  Nonetheless, TE Connectivity Network, Inc. has advised Tyco that it consents to this removal under CAFA.  (McGuigan, Decl., ¶2).

50.     Tyco will promptly serve Plaintiff with this Notice of Removal and will promptly file a copy of this Notice of Removal with the Superior Court of the State of California, County of San Mateo as required under 28 U.S.C. § 1446(d).

51.     Tyco has sought no other relief.

52.     If any question arises as to the propriety of the removal of this action, Defendants request the opportunity to present a brief and oral argument in support of its position that this case is removable.

WHEREFORE, Defendant Tyco Electronics Corporation respectfully requests that this action be removed from the Superior Court of the State of California in and for the County of San Mateo to the United States District Court for the Northern District of California, and that all future proceedings in this matter take place in the United States District Court for the Northern District of California.

Dated:  November 3, 2014                         MORGAN, LEWIS & BOCKIUS LLP


By     /s/ *Kathryn T. McGuigan*
           Kathryn T. McGuigan
       Attorneys for Defendants
       TE CONNECTIVITY NETWORKS, INC. and
       TYCO ELECTRONICS CORPORATION