UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| DALE WILSON, | Case No. 14-cv-04872-EDL |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| TE CONNECTIVITY NETWORKS, INC., et al., | |
| Defendants. | |

Before the Court is Plaintiff's motion for class certification. For the reasons discussed below, Plaintiff's motion is DENIED as to his meal and rest break classes and GRANTED IN PART as to his auto-deduct class.

## I.  FACTUAL BACKGROUND

Defendants Tyco Electronics Corporation ("Tyco") and TE Connectivity Networks, Inc. ("TECN") (together, "Defendants") manufacture electrical components at several facilities throughout California. Plaintiff Dale Wilson ("Plaintiff") was employed as a technician at Defendants' Redwood City, CA facility between 1972 and 2013. Wilson Decl. ¶ 2.

### A.  Defendants' Written Meal and Rest Break Policies

Plaintiff asserts that, according to the deposition testimony of Lynne Pereira, the Human Resources Manager at Defendants' Menlo Park facility, Defendants have no written manuals or guidelines setting forth whether and when employees must take meal and rest breaks. Pereira Tr. 123:4-25 ("[Employees] have been instructed to take [their] break in the morning, [their] lunch middle of the day, middle of [their] schedule, and the last break towards the end. Q Is that policy put forth in writing anywhere? . . . Is that set forth in writing as a Tyco policy? A As a Tyco Electronics Corporation policy, not that I know of. . . . A Because we would refer them to the

California since we're in California for more -- that would give more detail."). However, Defendants offer a declaration by Ms. Pereira in which she declares that she has ensured that California Manufacturing Wage Orders regarding meal and rest breaks are posted in several locations throughout Defendants' Redwood City and Menlo Park facilities. Pereira Decl. ¶¶ 4-5.

### B. Defendants' Provision of Meal and Rest Breaks

Plaintiff presents evidence that certain employees were not provided with the opportunity to take their first or second meal breaks. Fragosa Decl. ¶ 5; Roberts Decl. ¶ 5; Strachan Decl. ¶ 5; Epperly Decl. ¶ 5; Onken Decl. ¶ 5; Heier Decl. ¶ 5; Seda Decl. ¶ 6; Smith Decl. ¶ 8; Lopez Decl. ¶ 7. Plaintiff contends that employees were not compensated for working through their meal and rest breaks, and therefore averaged less than the minimum wage, and are owed additional wages and overtime.

In contrast, Defendants present evidence that other employees were provided with the opportunity to, and did, take all meal and rest breaks. Rios Decl. ¶¶ 6-7; Ulgado Decl. ¶¶ 2, 5; Hicks Decl. ¶ 2; Hamby Decl. ¶ 9; Cervantes Decl. ¶ 3; Blazic Decl. ¶ 7; Barbarin Decl. ¶ 5; Bandis Decl. ¶ 3; Heredia Decl. ¶ 8; Reyes Decl. ¶ 4; Robles Decl. ¶ 5; Chavez Decl. ¶ 3; Squillance Dep. 51:23-52:2; Hubis Decl. ¶ 7; Lopez Depo. 31:19-33:4, 34:21-23; Wilson Depo. 93:10-24 (acknowledging that 60% of the operators at his facility took their lunch break, and testifying it depended on the "diligence of [each] operator").[1]

### C. Defendants' Auto-Deduction Policy

Certain of Defendants' employees are subject to a policy whereby thirty minutes are automatically deducted from the employees' paychecks based on the assumption that they take half-hour meal breaks. Pereira Decl. ¶¶ 9-10. Plaintiff offers evidence that some of these

---

[1] Defendants point out that Judge Patel has already adjudicated the claims of one of Defendants' employees, who alleged in a separate lawsuit that he was not provided meal and rest breaks. Judge Patel concluded instead that "Plaintiff's testimony establishes that defendant did not deny him any required meal or rest breaks." Villa v. Tyco Electronics Corp., et al., Case No. C 10-00516 MHP (Jan. 7, 2011). The Court takes judicial notice of the existence of this decision but not the truth of the facts stated therein. See Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001); In re High-Tech Employee Antitrust Litig., 856 F. Supp. 2d 1103, 1108 (N.D. Cal. 2012). The employee in Villa was terminated in 2008, so he is not a member of Plaintiff's proposed classes.

1  employees were unable to take full half-hour meal breaks, but under the auto-deduction policy
2  nevertheless had a full half-hour of pay deducted from their paychecks.  See, e.g., Strahan Decl. ¶
3  4 ("[D]ue to TE implementing an auto-deduction policy for their meal breaks, I did not clock in or
4  out for meal breaks.  Due to this, if I did not take a full meal break, this would not be corrected in
5  my time records, and the company did not correct this error.").

6  Supervisors may override the auto-deduction if they learn that an employee did not, in fact,
7  take a meal break.  Pereira Tr. 96:2-10.  According to Ms. Pereira, "Employees . . . are told to
8  notify a supervisor if they do not take a meal break so that the manager can override a pay rule that
9  deducts a meal break."  Pereira Decl. ¶ 12.  However, Plaintiff submitted declarations from several
10 employees who stated that they never received such an instruction.  Lopez Decl. ¶ 6 ("TE would
11 not correct my time records nor was I ever told that I could ask TE to correct my time records");
12 Seda Decl. ¶ 5 (same); Squillance Decl. ¶ 6 (same); Smith Decl. ¶ 7 (same); Fragosa Decl. ¶ 4 ("I
13 did not know how to make the company aware of the false information regarding the length of my
14 meal periods that were cut short").  During the hearing, Defendants acknowledge that, since 2010,
15 they have never paid a meal period premium for a missed meal period, and supervisors have only
16 overridden an auto-deduction on one occasion.  See Segal Reply Decl. Ex. 4.[2]

17 **II.    PROCEDURAL HISTORY**

18 Plaintiff initiated this action in San Mateo Superior Court on October 1, 2014.  Defendants
19 removed it to this Court on November 3, 2014, contending that the amount in controversy
20 exceeded $25 million.  Plaintiff moved to remand to state court on January 22, 2015, and the
21 Court denied the motion without prejudice on March 26, 2016.  On June 6, 2016 and again on
22 August 1, 2016, the Court granted in part and denied in part Plaintiff's motion to compel
23 Defendants' discovery responses.  In both orders, the Court instructed Defendants to supplement
24 their response to Interrogatory 9, which asked Defendants to provide the facts in support of their
25 affirmative defenses, including their defense that Plaintiff's claims were not appropriate for class

---

[2] Plaintiff filed this exhibit along with an administrative motion to file it under seal because Defendants produced it with a confidential designation.  Dkt. 86.  However, Defendants filed a notice explaining that they do not oppose the public filing of this document.  Dkt. 88. Accordingly, Plaintiff's motion to seal is denied.

1  treatment. Plaintiff filed a renewed motion to remand on August 9, 2016, which the Court denied
2  on October 3, 2016.
3        Plaintiff filed his motion for class certification on October 11, 2016, Defendants filed their
4  opposition on November 22, 2016, and Plaintiff filed his reply on December 20, 2016. The Court
5  held a hearing on January 17, 2017.

## III. CLASS DEFINITIONS

Plaintiff's motion for class certification seeks to certify the following three classes:

(i) Meal Break Class: All persons employed by Defendants in hourly or non-exempt positions in California from October 1, 2010 through the date of class certification, who worked a shift of five hours or more.

(ii) Rest Break Class: All persons employed by Defendants in hourly or non-exempt positions in California from October 1, 2010 through the date of class certification, who worked a shift of three and a half hours or more.

(iii) Auto-Deduct Class: All persons employed by Defendants in hourly or non-exempt positions in California from October 1, 2010 through the date of class certification, who had a half hour deducted from their paychecks for a meal period.

## IV. LEGAL STANDARD

A plaintiff seeking class certification bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rules 23(a) -- numerosity,[3] commonality, typicality, and adequacy -- and at least one of the three requirements under Rule 23(b) are satisfied. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011); Ellis v. Costco Wholesale Corp., 657 F.3d 970, 979-80 (9th Cir.2011). Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual class members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

---

[3] Defendants do not dispute that Plaintiff's proposed classes are sufficiently numerous.

4

## V. DISCUSSION

### A. Admissibility of New Evidence

Both Parties have violated federal disclosure and discovery rules. As discussed below, the Court declines to impose exclusionary sanctions, and instead instructs the Parties to meet and confer regarding a briefing schedule for a motion or cross-motions for sanctions or other remedies. Within one week of the date of this order, the Parties shall file a two-page letter containing their joint proposal.

#### 1. Defendants' New Evidence Against Class Certification

Plaintiff contends that, despite the Court's two orders instructing Defendants to do so, Defendants did not fully respond to Plaintiff's Interrogatory 9, which requests facts in support of Defendants' affirmative defense that Plaintiff's claims are not appropriate for class treatment. Plaintiff asks the Court to preclude Defendants from introducing previously undisclosed evidence in their opposition to class certification.

On June 1, 2015, Defendant responded to Interrogatory 9 with various objections, and stated that "[a]ll defenses are legal defenses based on the allegations contained in Plaintiff's complaint." On June 6, 2016, the Court ordered Defendants to supplement their response to Interrogatory 9 by June 30, 2016. Defendants supplemented their response as follows:

> (a) Plaintiff is an inadequate representative of the putative classes; (b) Plaintiff cannot establish commonality of claims; (c) Plaintiff cannot establish typicality of claims; and (d) the individualized nature of Plaintiff's claims predominates and thus makes class treatment improper. The types of claims alleged by the named Plaintiff on behalf of himself and the putative classes, the existence of which is expressly denied, are matters in which individual questions predominate and, accordingly, are not appropriate for class treatment. Defendant further asserts that this defense has been pled to preserve Defendant's rights and that additional facts supporting this defense will be asserted through completion of discovery.

On August 1, 2016, the Court issued an order in response to the Parties' joint letter regarding various discovery disputes. The order stated, "Plaintiffs are correct that, for many of Defendants' affirmative defenses, Defendants have provided no facts. . . . In particular the following affirmative defenses appear to require additional factual support: . . . not appropriate for class treatment[.] Defendants shall further supplement their response to this interrogatory within

two weeks of the date of this order." Dkt. 65.

On August 15, 2016, Defendants again supplemented their response as follows:

> First, Defendant asserts that this is not a true affirmative defense as Plaintiff has the burden of demonstrating that his claims are appropriate for class treatment. Further, Defendant asserts that it cannot provide every fact upon which it will oppose a motion for class certification until it receives Plaintiff's moving papers explaining his theory of class certification. Nevertheless, to the extent Defendant understand Plaintiff's theories at this time, Plaintiff may not be an adequate class representative of the putative classes because he has brought a separate action against Tyco alleging discrimination and wrongful termination. Plaintiff's claims are not typical of the putative class because his deposition testimony indicates that he was not subject to the same terms and conditions of employment of the class he seeks to represent. Plaintiff testified that the non-exempt employees at the Redwood City Facility where Plaintiff worked, with the exception of the engineering technicians, all have set schedules with set times to arrive, take rest breaks, take meal breaks, and leave. By contrast, the engineering technicians (including Plaintiff during all relevant times) had generally flexible hours. Plaintiff testified that he had the opportunity to take meal and rest breaks but chose not to because he felt his work load was too busy. Plaintiff testified that he did not know the policies or practices regarding meal and rest breaks at any other Tyco facilities. Furthermore, whether an individual employee was provided a proper rest or meal break is an inherently individualized inquiry not appropriate for class treatment. Thus, Plaintiff has no evidence to show that there is a certifiable class.

When a party fails to obey a discovery order, courts have discretion to order the facts at issue "established" for purposes of the action, or to preclude the disobedient party from using the materials or information that should have been produced. Fed. R. Civ. P. 37(b)(2)(A); see also B-K Lighting, Inc. v. Vision3 Lighting, 930 F. Supp. 2d 1102, 1137 (C.D. Cal. 2013); Craftwood Lumber Co. v. Interline Brands, Inc., No. 11 C 4462, 2013 WL 4598490, at *13-14 (N.D. Ill. Aug. 29, 2013); Apple, Inc. v. Samsung Elecs. Co., No. 11-CV-01846-LHK, 2012 WL 3155574, at *5-6 (N.D. Cal. Aug. 2, 2012). "Evidentiary preclusion is a harsh sanction that generally is not imposed where the failure to provide discovery was either substantially justified or harmless." FormFactor, Inc v. Micro-Probe, Inc., No. C-10-03095 PJH JCS, 2012 WL 1575093, at *2 (N.D. Cal. May 3, 2012);

Here, the Court has the discretion to award exclusionary sanctions. Although Defendants twice supplemented their response to Interrogatory 9, maintaining that class certification was not

appropriate, Interrogatory 9 did not ask Defendants whether certification was appropriate. It asked them to provide the *facts* underlying their contention that certification was inappropriate. In their second set of responses, Defendants provided the following facts: Plaintiff is not adequate because he brought a separate action against Tyco; Plaintiff is not typical because his deposition indicates that he had flexible hours whereas other putative class members had set schedules with set times to arrive, take rest breaks, take meal breaks, and leave; Plaintiff had the opportunity to take meal and rest breaks but chose not to; and Plaintiff did not know the policies or practices regarding meal and rest breaks at any other Tyco facilities. Defendants also stated that "whether an individual employee was provided a proper rest or meal break is an inherently individualized inquiry," but did not provide any facts in support of this contention.

Defendants now seek to introduce multiple previously undisclosed facts in opposition to class certification, including the fact that Defendants post wage orders in their facilities, Defendants provide training to employees regarding meal and rest breaks, employees never complained about missed meal breaks, employees use various time-keeping systems, and supervisors can override automatic deductions. Defendants have provided no satisfactory explanation as to why their failure to provide these facts earlier was substantially justified. Although they argued at the hearing that they first needed to review Plaintiff's motion for class certification, they already knew the nature of Plaintiff's claims and could readily foresee the relevance of such evidence in Defendants' possession. Further, as in Apple, Inc., Plaintiff has been prejudiced by his inability to investigate Defendants' asserted facts through his own discovery.

Nevertheless, because "[c]ases should be decided upon their merits whenever reasonably possible[,]" Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986), the Court declines to exercise its discretion to exclude Defendants' new evidence. Instead, as noted above, the Court will consider other appropriate remedies or sanctions for Defendants' failure to fully respond to Plaintiff's Interrogatory 9, including further discovery or monetary sanctions, if an appropriate motion is filed.

### 2. Plaintiff's New Declarants

Pursuant to Rule 37(c)(1), "[i]f a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence on a motion . . . , unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); Yeti by Molly Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001). Defendants contend that four employee declarations that Plaintiff filed in support of his motion for class certification, adding the employees' job responsibilities and schedules and stating that they did not receive their full meal and rest breaks multiple times per week, Dkts. 77-4, 77-8, 77-9, 77-10, should be stricken because Plaintiff failed to disclose these witnesses without substantial justification. Defendants further argue that they were prejudiced by Plaintiff's failure to disclose because they did not depose these witnesses, and their depositions of Plaintiff's other witnesses revealed that Plaintiff's counsel omitted facts from witnesses' declarations, witnesses disagreed with some statements in their depositions, and witnesses did not review their declarations before signing them.[4]

Plaintiff does not explain why he failed to disclose these four witnesses, instead arguing that Defendants were not prejudiced by the omission because the witnesses were included in the sample list of four hundred class members that Defendants provided to Plaintiff in an effort to resolve the Parties' dispute over production of a class list. But Defendants could not have been expected to depose all four hundred employees on this sample list, nor to know which of them to depose. Thus, the Court could exclude these four declarations. However, it prefers to decide Plaintiff's motion for class certification on the merits, and will instead consider the issue of remedies/sanctions for Plaintiff's failure to fully disclose his declarants separately.

### 3. Defendants' New Declarants

In his reply, Plaintiff contends that Defendants also failed to timely disclose certain declarants, and that these declarations should also be stricken. According to Plaintiff, on April 7, 2015, he propounded Interrogatory 10 seeking the identification of Defendants' percipient

---

[4] Plaintiff does not deny that some declarants signed their declarations without reading them, but maintains that their deposition testimony confirms that their declarations are truthful. Reply at 10.

8

witnesses.  On November 8, 2016, Plaintiff's counsel sent Defendants' counsel an email stating, "Please allow this email to confirm that Defendant will not be using any declarants in opposition to our class cert motion."  Defendants' counsel responded on November 9, 2016, stating that they had not yet identified their declarants, but would disclose them as soon as they were identified.  However, Defendants had in fact already obtained signed declarations from 10 of the 25 declarants:  Seda (declaration signed November 1, 2016); Blazic (declaration signed November 3, 2016); and Vasquez, Cervantes, Ulgado, Rios, Hicks, Hernandez, Ensing, and Cervantes (declarations signed November 4).  Defendants did not disclose any of these witnesses until November 17, 2016.  The Court will consider remedies/sanctions for Defendants' failure to timely disclose their declarants, as discussed above.

**B.    Rule 23 Factors**

**1.    Commonality, Predominance, and Superiority**

"[C]ommonality requires that . . . class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'"  Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588 (9th Cir. 2012) (quoting Wal-Mart, 564 U.S. at 350).  The key inquiry is not whether the plaintiff has raised common questions, "even in droves," but rather whether class treatment will "generate common answers apt to drive the resolution of the litigation."  Wal-Mart, 564 U.S. at 350 (citation omitted).  "This does not, however, mean that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single *significant* question of law or fact.'"  Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013) (quoting Mazza, 666 F.3d at 589).

In addition, certification under Rule 23(b)(3) requires that the court find "that the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  Although there may be "some variation" among individual plaintiffs' claims, Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1163 (9th Cir. 2001), "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)," Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013).  "A principal purpose behind Rule 23 class actions is to promote efficiency and economy of

9

1   litigation." In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 958 (9th Cir.

2   2009). Thus, "[t]he predominance analysis under Rule 23(b)(3) focuses on 'the relationship

3   between the common and individual issues' in the case," and tests whether the proposed class is

4   "'sufficiently cohesive to warrant adjudication by representation.'" Abdullah v. U.S. Sec. Assocs.,

5   Inc., 731 F.3d 952, 964 (9th Cir. 2013) (quoting Wang v. Chinese Daily News, Inc., 737 F.3d 538

6   (9th Cir. 2013)).

Similarly, if "the complexities of class action treatment outweigh the benefits of considering common issues in one trial," and "each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1192 (9th Cir. 2001).

### a. Meal and Rest Breaks

California Labor Code Section 512(a) provides:

> An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

Cal. Labor Code § 512(a). Similarly, industrial Welfare Commission Order 14-2001 provides:

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours.

Cal. Code Regs. tit. 8, § 11140. To satisfy its duty to "provide" a meal or rest break, an employer must "relieve the employee of all duty for the designated period, but need not ensure that the employee does no work." Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1034 (2012). If an employer fails to provide required meal or rest breaks, the employer is liable for one hour of

pay at the employee's regular rate (referred to as the "meal period premium" or "rest period premium") for each workday that the employee was not provided a meal or rest period. Cal. Labor Code § 226.7(c).

Plaintiff contends that Defendants are liable for violating Plaintiff and class members' right to meal and rest breaks because they failed to adopt meal and rest break policies and train supervisors regarding these policies. Plaintiff cites two cases considering certification under California law for the proposition that a *lack* of policy constitutes a "uniform" policy sufficient to support certification. Bradley v. Networkers Int'l, LLC, 211 Cal. App. 4th 1129, 1150 (2012); Benton v. Telecom Network Specialists, Inc., 220 Cal. App. 4th 701, 726 (2013). However, Defendants defeat this argument by providing evidence that they have formal meal and rest break policies and do train supervisors regarding these policies. Pereira Decl. ¶¶ 4-5; Pereira Decl. ¶ 6; Green Decl. ¶ 6; Reasons Decl. ¶ 4; Hubis Decl. ¶ 4.

Plaintiff also argues that his meal and rest break classes should be certified because Defendants failed to provide employees with legally required meal and rest breaks. He contends that Defendants' liability as to all class members can be established with common answers, and that such answers predominate. However, courts consistently disagree because individualized issues predominate in meal and rest break claims. See Washington v. Joe's Crab Shack, 271 F.R.D. 629, 641-42 (N.D. Cal. 2010); Jasper v. C.R. England, Inc., No. CV08-5266-GW(CWX), 2009 WL 873360, at *5 (C.D. Cal. Mar. 30, 2009); Brown v. Fed. Express Corp., 249 F.R.D. 580, 586 (C.D. Cal. 2008); Kimoto v. McDonald's Corps., No. CV 06-3032PSGFMOX, 2008 WL 4690536, at *6 (C.D. Cal. Aug. 19, 2008); Lanzarone v. Guardsmark Holdings, Inc., No. CV06-1136 RPLAX, 2006 WL 4393465, at *4 (C.D. Cal. Sept. 7, 2006). Accordingly, Plaintiff's proposed meal and rest break classes cannot be certified.

### b.     Auto-Deduction Policy

Plaintiff contends that Defendants' policy of automatically deducting thirty minutes from certain employees' paychecks violates their obligation to provide and keep records of meal breaks and is susceptible to common proof. Defendants respond that supervisors may correct employees' time sheets if they learn that employees did not, in fact, take a meal break. They contend that, in

11

light of their lawful policy, individualized inquiries predominate regarding whether such corrections in fact took place.

The case law regarding certification of auto-deduct classes is mixed. California district courts have certified auto-deduct classes under Rule 23 on two prior occasions. In Nguyen v. Baxter Healthcare Corp., 275 F.R.D. 596 (C.D. Cal. 2011), the employer "used software which automatically deducted one 30 minute meal break per shift from all employees' time, without regard to whether a first meal break was late or missed, or whether a second meal break was required on a shift of more than 10 hours." Id. at 600. The court distinguished the case from Wal-Mart, concluding that, "[u]nlike Wal-Mart, there appears no basis for finding that any of these actions were taken on an individual case-by-case basis, nor is the putative class so large and disparate that it was subject to a wide variety of supervisory practices which would require separate analysis." Id. Accordingly, the court concluded that certification was appropriate.

Similarly, in Dilts v. Penske Logistics, LLC, 267 F.R.D. 625, 635 (S.D. Cal. 2010), the court found that common questions predominated. Id. at 635. It stated:

> The ultimate underlying factual issue is the existence of the thirty minute auto-deduct. If class members were not paid for time they actually worked, then Defendant is liable. And there is no question that Defendant deducted thirty minutes per day regardless of whether a break was taken. Thus, the common issues predominate over the individual issues on the question of liability.

Id. The court based this conclusion on the fact that "Defendant's corporate representative could not identify a single instance during the class period where an 'auto-deduction' was reversed, nor was he aware of whether the capability of a manual override was ever communicated to employees or on-site managers. Nor has Defendant ever paid a[n] additional hour of compensation to any class member in lieu of missed lunch break." Id. (citations omitted).

California district courts also twice approved settlements of class actions involving auto-deduct claims. In Bond. v. Ferguson Enterprises, Inc., No. 1:09-CV-01662, 2011 WL 284962 (E.D. Cal. Jan. 25, 2011), the court held that "[w]hether Defendant automatically deducted thirty minutes worth of working time on the basis of the unverified assumption that truck drivers always took a half-hour, off-duty meal break and in lieu of keeping contemporaneous or accurate meal

12

break records" was a common question for purposes of settlement. Id. at *5. Similarly, in Singer v. Becton Dickinson & Co., No. 08-CV-821-IEG(BLM), 2009 WL 4809646 (S.D. Cal. Dec. 9, 2009), the court held that the auto-deduct class was "subject to [a] uniform polic[y]" whereby "Defendants utilized an 'auto-deduction' feature in their time/pay system, which automatically deducted 30 minutes of time from non-exempt employees' time for meal period." Id. at *6.

Plaintiff's motion for class certification also cited Harp v. Starline Tours of Hollywood, Inc., 2015 WL 4589736 (C.D. Cal. 2015), in which a court conditionally certified a FLSA collective action. Id. at *6 (conditionally certifying FLSA class where plaintiffs offered three declarations from employees testifying that they "were often prevented from taking lunch breaks, but that such breaks were nonetheless automatically deducted from their reported hours"). During the hearing, Defendants argued that this case nonetheless weighs against certification because it cited several cases holding that auto-deduct is legal. In fact, Harp cited cases for the proposition that "standing alone, automatic meal deduction policies are not per se illegal under the FLSA." Id. (collecting cases). Harp and the cases cited therein conclude that "employers utilizing an automatic meal deduction policy may legally shift the burden to their employees to cancel the automatic deduction if they work through an unpaid meal break." See, e.g., Gessele v. Jack in the Box, Inc., No. 3:10-CV-960-ST, 2013 WL 1326563, at *23 (D. Or. Jan. 28, 2013), report and recommendation adopted, No. 3:1 0-CV-00960-ST, 2013 WL 1326538 (D. Or. Apr. 1, 2013). Instead, "it is the failure to compensate an employee who worked with the employer's knowledge through an unpaid meal break -- whether the employee reported the additional time or not -- that potentially violates the FLSA." Id.

The Harp court nonetheless conditionally certified a subclass of drivers. It concluded:

> [P]laintiffs have made substantial allegations that defendants maintained a "policy-to-violate-the-policy," but only as to drivers -- not all hourly employees. Plaintiffs proffer three declarations from individuals exclusively employed as drivers, and each avers that they were often prevented from taking lunch breaks, but that such breaks were nonetheless automatically deducted from their reported hours. Although defendants proffer evidence that drivers are instructed to notify their dispatch supervisor to reverse automatic deductions where a meal break is missed, plaintiffs' affidavits plausibly suggest that either these instructions were insufficiently communicated or, despite notification, the deductions were not

13

reversed.

Harp, 2015 WL 4589736, at *6-7. Although this case arose under FLSA, not Rule 23, and thus applied a different certification standard, it is in line with Dilts in concluding that an auto-deduct class can be certified where Plaintiff presents evidence that the employer did not communicate to employees the fact that auto-deduct could be manually reversed or that the employer did not actually implement such reversals.

Plaintiff also cited Jimenez v. Allstate Ins. Co., 765 F.3d 1161 (9th Cir. 2014) in his reply and during the hearing. In that case,

> [T]he manager of each local office has the power to file a timekeeping "exception" or "deviation" from the default expectation of 8 hours per day and 40 hours per week . . . when a claims adjuster's request for overtime or early leave is approved. Managers do not adjust time cards based on either their own observations of work habits or on the technological records contained in computer and telephone systems. Each local office has a non-negotiable compensation budget, which creates a functional limit on the amount of overtime a manager may approve.

Id. at 1163. The Jimenez timekeeping policy has some similarities to Defendants' auto-deduct policy. However, as Defendants noted during the hearing, the Jimenez court concluded that plaintiffs satisfied commonality based in part on the district court's finding that the employer had an "unofficial policy of discouraging reporting of overtime[.]" Id. at 1165-66. Plaintiff has not identified a similar unofficial policy of discouraging reporting of missed meal breaks here.

Finally, in his reply and during the hearing, Plaintiff argued that the fact that Defendants never once paid a meal break premium renders the class amendable to certification both because it (i) indicates that Defendants never corrected or compensated missed meal breaks for which pay was automatically deducted, and (ii) is an independent basis for certification under Safeway Inc. v. Superior Court, 238 Cal. App.4th 1138 (2015). In Safeway, the court certified the plaintiff's class under California law. There, however, the court observed that the plaintiff's theory "predicates liability on [defendants'] alleged practice of never paying meal break premium wages when required, and seeks restitution for the class-wide loss of the statutory benefits implemented by section 226.7, not the premium wages accrued by class members. Accordingly, establishing [plaintiffs'] theory does not necessitate excessive individualized assessments of time punch data or

14

similar inquiries." Id. at 1161.  Here, by contrast, Plaintiff does seek the premium wages accrued by class members, and he moves for certification under Rule 23, not California law.  Cf. Arnold v. United Artists Theatre Circuit, Inc., 158 F.R.D. 439, 444 (N.D. Cal. 1994) (noting "differences between [California] state court's class certification and the certification sought on [Rule 23] motion").

While these cases are helpful to Plaintiff, other California district courts have declined to certify auto-deduct classes.  In Ramirez v. United Rentals, Inc., No. 5:10-CV-04374 EJD, 2013 WL 2646648 (N.D. Cal. June 12, 2013), the court noted that "[t]he evidence in th[e] case . . . suggests a policy of allowing managerial discretion in deciding how to track meal breaks.  Importantly, managers could choose whether or not to implement the . . . auto-deduct feature." Id. at *5.  Because "uncontroverted evidence shows that practices varied from branch to branch, such that there was no one common policy," the court concluded that the auto-deduct class lacked commonality.  Id.  During the hearing, Plaintiff pointed out that this case (and the others discussed below) was decided before Jimenez.  However, for the reasons discussed above, Jimenez is distinguishable.

In the two other cases, the courts found that auto-deduct classes satisfied commonality but not predominance.  In Villa v. United Site Servs. of California, Inc., No. 5:12-CV-00318-LHK, 2012 WL 5503550 (N.D. Cal. Nov. 13, 2012), the court found that, "[t]hough there may be divergent factual predicates concerning how th[e] [auto-deduct] policy affected different employees, it does raise shared legal issues, which is all that is required to satisfy the commonality requirement of Rule 23(a)." Id. at *6.  However, the court ultimately found that these individualized inquiries predominated, in part because individual managers had discretion as to how to implement the broader policy, and declined to certify the class.  Id.[5]  Similarly, in

---

[5] The Ramirez court commented on Villa, noting that "the facts of the . . . motion [before it] weigh[ed] even more heavily against certification than those in Villa[.]"  2013 WL 2646648, at *5.  It noted that, in Villa, "the court did find a common question: whether the defendant's policy or practice of deducting time from its workers' shifts for off-duty meal breaks whether or not those breaks were taken was illegal. . . .  In that case, the defendant's own witnesses confirmed that there was a common automatic deduction policy; no contrary evidence was presented.  Here, uncontroverted evidence shows that practices varied from branch to branch, such that there was no one common policy." Id.

Blackwell v. SkyWest Airlines, Inc., 245 F.R.D. 453, 461 (S.D. Cal. 2007), the court stated:

> To buttress its argument [against commonality], Defendant offers 84 employee declarations, all stating that when agents or supervisors missed meals, a procedure was in place to correct the 'auto-deduct.' This argument does not defeat commonality. Whether Defendant had in place a procedure to correct the auto-deduct does not negate the fact that common legal and factual questions exist.

Id. at 461. However, the court found that individualized issues predominated. Id. at 467-68.

During the hearing, Defendants cited Brown v. Fed. Express Corp., 249 F.R.D. 580 (C.D. Cal. 2008), arguing that the court there denied certification of an auto-deduct class. However, Brown does not appear to have involved an auto-deduct class. Id. at 582 ("Plaintiffs contend that [employer] was committed to making a large number of deliveries on time and devoted insufficient resources to this task. As a result, [employees] were put under excessive pressure to make deliveries as quickly as possible, such that they were unable to take meal breaks and rest breaks within the time required by law."). The Brown court declined to certify putative meal and rest break classes for lack of commonality. See id. at 586. This case does not speak to the appropriateness of certification of an auto-deduct class. Also during the hearing, Defendants cited Cornn v. United Parcel Serv., Inc., No. C03-2001 TEH, 2005 WL 588431 (N.D. Cal. Mar. 14, 2005). But in Cornn, the court found that the plaintiffs satisfied commonality for their proposed auto-deduct class, noting that differences in time entry systems were "not significant for class certification purposes because Plaintiffs have presented evidence that both systems included a standard lunch deduction," even though managers had discretion to override the deduction. Id. at *7-8.

Here, as discussed above, certain employees are subject to an auto-deduction policy whereby Defendants automatically deduct 30 minutes for a meal break from these employees' paychecks. Pereira Decl. ¶ 9 ("If programmed, [one particular] pay rule deducts 30 minutes for a meal period after the employee has worked 2 hours and 6 minutes, unless it is changed by a supervisor. If programmed, [a different] pay rule deducts 30 minutes [for a] meal period after the employee has worked 5 hours and 1 minute, unless it is changed by a supervisor."). Although there is no form that employees can complete in order to notify their supervisors that they did not,

16

1  in fact, take a 30-minute break, Pereira Tr. 96:2-7, supervisors have the discretion to override this

2  automatic deduction if they "become aware" that employees did not, in fact, take a 30-minute

3  break. Pereira Decl. ¶ 11.

4  However, Plaintiff submitted declarations from several employees who stated that they

5  never received an instruction to notify their supervisors if they missed their meal breaks. Lopez

6  Decl. ¶ 6 ("TE would not correct my time records nor was I ever told that I could ask TE to correct

7  my time records"); Seda Decl. ¶ 5 (same); Squillance Decl. ¶ 6 (same); Smith Decl. ¶ 7 (same);

8  Fragosa Decl. ¶ 4 ("I did not know how to make the company aware of the false information

9  regarding the length of my meal periods that were cut short"). Moreover, Defendants concede

10 that, since 2010, they have *never* paid a meal period premium for a missed meal period, and

11 supervisors have only overridden an auto-deduct on *one occasion*. See Segal Reply Decl. Ex. 4.

12 In other words, as in Dilts and Harp, actual corrections to employees' time sheets were

13 extremely rare, and Defendants never paid additional compensation to employees in lieu of a

14 missed meal breaks. Defendants assert that this is because employees always receive their meal

15 breaks. While a close question, this assertion is insufficient to defeat certification under the cases

16 discussed above. Defendants also argue that the fact that Jimmy Hernandez, who held the same

17 position as Plaintiff, never missed a meal break indicates that individualized inquiries

18 predominate. See Hernandez Decl. ¶ 3. However, "the predominance requirement [does not]

19 constitute a uniformity requirement, such that a single exception would defeat class certification."

20 Delagarza v. Tesoro Ref. & Mktg. Co., No. C-09-5803 EMC, 2011 WL 4017967, at *12 (N.D.

21 Cal. Sept. 8, 2011).

### 2. Typicality

23 Typicality requires that "the claims or defenses of the representative parties [be] typical of

24 the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive

25 standards, representative claims are 'typical' if they are reasonably co-extensive with those of

26 absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. The

27 relevant question is whether the challenged policies and practices apply to the named plaintiff in

28 the same way that they apply to the class members that the named plaintiff seeks to represent. See

1  Cornn, 2005 WL 588431, at *7.

2  Here, Plaintiff's declaration asserts that he was subject to the same challenged policies and
3  practices as the other employees in the auto-deduction class. His declaration states that, during his
4  time working for Defendants:

> [T]here were multiple occasions when [he] was unable to take a full meal break or was unable to take a meal break due to pressures of work or being interrupted by [his] supervisor. In a typical five day week [he] would not get a full meal break on at least three days. Because of [Defendants'] policy of automatically deducting a 30 minute meal break, [he] was not compensated for these interrupted or missed meal breaks. . . . [In addition, he] often was unable to take rest breaks due to pressure to work. [He] was never compensated for any interrupted or missing rest breaks.

Wilson Decl. ¶¶ 4, 6.

Defendants respond that Plaintiff, a technician, is not typical of "mailroom workers, quality assurance supervisors, forklift operators, shipping and receiving personnel, or any others throughout Tyco's California facilities who worked entirely different positions." Opp. at 21. They point out that Plaintiff testified that he was not instructed to take meal breaks, nor was he required to report to anyone upon leaving for or returning from breaks. Wilson Depo. 184:18-23; 185:10-12. By contrast, Defendants provide evidence that other members of Plaintiff's putative classes had different experiences. Pereira Decl. ¶15 ("Some managers stagger meal and rest breaks, some shut down the production line completely during breaks and operations completely cease during scheduled breaks . . . some employees take their breaks according to a posted schedule, some know the break schedule by routine, some employees are told to stop working when they hear the break bell, some employees are told to stop working by a lead who typically yell "break time" or "lunch time." Some supervisors do a sweep of the floor to make sure no employees are left behind during breaks.").

Plaintiff is not typical of employees who were unable to work through their meal breaks because their production lines completely shut down. Instead, he is only typical of those auto-deduct employees who were, as he was, physically capable of working through their meal breaks. The Court does not have sufficient evidence before it to determine the precise scope of the class as to which Plaintiff is typical and common issues predominate. Accordingly, within two weeks of

18

the date of this order, Plaintiff shall file either (i) a supplemental brief of no more than ten pages regarding the scope of such a class, or (ii) a motion to take additional discovery relevant to that determination. Defendants shall file a response to the supplemental brief or the discovery motion, not exceeding ten pages, within one week of that date.  If Plaintiff files a discovery motion rather than a supplemental brief, the Court will set a briefing schedule for a supplemental brief and response in its order on Plaintiff's discovery motion.

### 3. Adequacy

Rule 23(a) also requires that "the representative parties . . . fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them.  See Hansberry v. Lee, 311 U.S. 32, 42-43 (1940).  "Resolution of two questions determines legal adequacy:  (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Hanlon, 150 F.3d at 1020 (citing Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978)).

Defendants contend that Plaintiff is not an adequate representative because he is involved in a separate lawsuit against Defendants in San Mateo Superior Court in which he alleges age discrimination, wrongful termination, and infliction of emotional distress, and therefore has a conflict of interest because his "individual action makes it more likely that Plaintiff could improperly use the putative class action as leverage to get more money out of his personal action." Opp. at 21-22.  However, as Plaintiff points out, Defendants do not cite any cases in which involvement in a separate lawsuit with different issues justified a finding of inadequacy.

In Kayes v. Pac. Lumber Co., 51 F.3d 1449 (9th Cir. 1995), cited by Defendants, the Ninth Circuit noted that a plaintiff's vindictiveness against defendants was one factor that could indicate inadequacy, but found that repeat litigation against a defendant did *not* necessarily indicate vindictiveness, and observed that "'the vengeance of an aggrieved person more often engenders the zealous prosecution essential to a class action than the *over*-zealous prosecution which may threaten to strangle a class action.'" Id. at 1464 (citation omitted).  Indeed, in Soto v. Commercial

19

Recovery Sys., Inc., No. C 09-2842 PJH, 2011 WL 6024514, at *6 (N.D. Cal. Dec. 5, 2011), the Court found that a plaintiff's related litigation in state court did not render him inadequate. Id. at *6 ("The state and federal proceedings are unrelated, and plaintiff asserts only class claims in this action").

### C. Derivative Claims

The Parties agree that the certification of Plaintiff's derivative claims -- for violations of Labor Code Sections 203 and 226(a), as well as Business & Professions Code Section 17200 -- rises or falls with certification of his underlying wage and hour claims. Accordingly, because the Court concludes that Plaintiff's auto-deduct class (narrowed as discussed above) is appropriate for class treatment, his derivative claims are appropriate for class treatment as well. See Dilts, 267 F.R.D. at 640 ("[I]f Plaintiffs' [auto-deduct] claim[] can be tried on a class wide basis, these [Labor Code and Business & Professions Code] claims are also ripe for class adjudication.").

## VI. CONCLUSION

As set forth above, individualized inquiries predominate as to Plaintiff's meal and rest break classes, and therefore the Court DENIES Plaintiff's motion to certify these classes. It GRANTS IN PART Plaintiff's motion to certify the auto-deduct class. Plaintiff shall file a supplemental brief or discovery motion regarding the scope of this class, and Defendant shall file a response, as discussed above.

**IT IS SO ORDERED.**

Dated: February 9, 2017

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge