MELINDA S. RIECHERT, Bar No. 65504
JENNIFER SVANFELDT, Bar No. 233248
MORGAN, LEWIS & BOCKIUS LLP
melinda.riechert@morganlewis.com
jennifer.svanfeldt@morganlewis.com
One Market, Spear Street Tower
San Francisco, California  94105-1596
Telephone: +1.415.442.1000
Facsimile:  +1.415.442.1001

KATHRYN T. MCGUIGAN, Bar No. 232112
MORGAN, LEWIS & BOCKIUS LLP
kathryn.mcguigan@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, California  90071-3132
Telephone: +1.213.612.2500
Facsimile:  +1.213.612.2501

Attorneys for Defendants
TE CONNECTIVITY NETWORKS, INC. and
TYCO ELECTRONICS CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALE WILSON, on behalf of himself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>TE CONNECTIVITY NETWORKS, INC.; a Minnesota corporation; TYCO ELECTRONICS CORPORATION, a Pennsylvania corporation, and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 3:14-cv-04872-EDL<br><br>**OPPOSITION TO PLAINTIFF'S SUPPLEMENTAL MOTION FOR CERTIFICATION OF AUTO-DEDUCT CLASS** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

OPP'N TO SUPP. MOT. FOR CERT. OF
AUTO-DEDUCT CLASS
Case No. 3:14-cv-04872-EDL

## I.     INTRODUCTION

Plaintiff Dale Wilson ("Plaintiff") alleges that he could not reliably take meal breaks or full meal breaks "due to pressure of work or being interrupted by [his] supervisor" and that Defendant Tyco Electronic Corporation ("Defendant") deducted 30-minutes from his pay regardless of whether breaks were actually taken. Dkt. 77-12 at ¶ 4 (Declaration of Dale Wilson). Plaintiff was given nearly six months to obtain evidence showing the precise scope of the Auto-Deduct Class as to which he is typical and common issues predominate (*e.g.*, hourly employees who, like Plaintiff, had the kind of job where they could not reliably take breaks and were subject to the 30-minute auto-deduction regardless of whether breaks were actually taken). However, Plaintiff's evidence still does not show that he is typical and that common issues predominate.

First, there is no common policy to deduct 30 minutes of pay regardless of whether a meal break was taken. Defendant submitted declarations from managers confirming that they notified employees that supervisors could override the auto-deduction if they did not take a meal break and supervisors could and did commonly override it.

Second, Plaintiff has not submitted any evidence showing that a common practice deprived employees of meal breaks. To the contrary, the evidence shows that managers took affirmative measures that ensured employees could not, and did not, work during meal breaks. Those measures varied from facility to facility and work group to work group, and included:

- some employees could not perform work during meal breaks because their machines shut down and they were "swept" off the factory floor by a production lead;
- entire workgroups stopped working at the same time for breaks pursuant to a posted schedule;
- some employees could not perform work unless their entire assembly line was working at the same time to keep the work on the line flowing;
- some employees were reminded to take meal breaks;
- some employees were told when to stop working by a coordinator, lead or supervisor;
- some employees had their meal breaks "staggered" so that another employee could take their place at a machine during breaks; and
- Robert Arteaga's testimony confirms that many employees in Menlo Park work on machines

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

OPP'N TO P'S SUPP. MOT. FOR
CERTIFICATION OF AUTO-DEDUCT
CLASS
Case No. 3:14-cv-04872-EDL

that are shut down during breaks.

Third, since the last hearing, Plaintiff received a class list with the names and contact information of 400 additional employees. He has not supplied the Court with any additional testimony from class members showing they, like Plaintiff, had the kind of job where they could not reliably take breaks and were left with the discretion to schedule their own breaks. The only evidence of an employee who had the same job as Plaintiff shows that he *never* missed a meal break. Declaration of James Hernandez ¶4.

Finally, the class member declarations Plaintiff submitted with his original motion for class certification are not credible. Laura Seda testified that Plaintiff's attorney omitted from her declaration the fact that she took meal breaks each day. She also testified that no one ever prevented her from taking a full 30-minutes and that nothing about her job or work demand kept her from taking a full 30 minutes. At her deposition, Rafaela Onken could not recall a day that she was not provided a meal break of at least 30 minutes. Donald Lopez and Michael Epperly testified that they were always provided an opportunity to take a 30 minute meal break. David Strachan and Eric Sigmar are not part of the Auto-Deduct Class. Pursuant to the parties' stipulation, William Smith's declaration has been withdrawn. Dkt. 113 (Plaintiff "agreed to withdraw Mr. Smith's declaration if he did not appear for deposition on a date before September 29, 2017.")

## II.   RELEVANT BACKGROUND

On February 9, 2017, the Court found that Plaintiff was "only typical of those auto-deduct employees who were, as he was, physically capable of working through their meal breaks" but the Court "d[id] not have sufficient evidence before it to determine the precise scope of the [auto-deduct] class as to which Plaintiff is typical and common issues predominate."[1] Dkt. 96 at 18:24-28. Accordingly, the Court granted Plaintiff an opportunity to take discovery relevant to that inquiry and ordered Defendant to serve declarations by May 16, 2017 that:

---

[1] As reflected by the Transcript of Official Electronic Sound Recording of Proceedings, the Court noted that "it's possible that there is a group of people that are like the plaintiff, who have some evidence that the plaintiff himself was -- **had the kind of job where he couldn't reliably take breaks, and so auto-deduct would be improperly applied.** Now, the question whether that's an individual claim that can be a class claim, if so, as to who, **I don't think there was much of a showing by the plaintiff that he's similarly situated to a lot of other people.** Yes, they're all subject to auto-deduct; however, if the auto-deduct is, in fact, a line that is shut down for half an hour at lunchtime every day and that's the way it's done, that's not similar to his situation at all. [Dkt. 93 at 3:21-4:15] (Emphasis added).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

OPP'N TO P'S SUPP. MOT. FOR
CERTIFICATION OF AUTO-DEDUCT
CLASS
Case No. 3:14-cv-04872-EDL

> Describe[d] how production employees in each department and/or each work group at each facility in California where putative class members worked during the class period are provided and take meal breaks, and whether there was an assembly or production line that stopped operating or it was otherwise physically impossible for employees to work during a meal break. The declarations will also identify the time recording rule that applies to each production department and/or each work group at each facility in California.

Defendant has now produced a total of 31 declarations from declarants.[2] Defendant also produced a spreadsheet listing employees by their ID numbers, job titles and business unit/workgroup at each California facility. From this list Plaintiff requested and received the names and contact information of 400 employees. Yet, Plaintiff he has not produced any additional class member declarations. Declaration of Jennifer Svanfeldt ("Svanfeldt Decl.") ¶ 10. Plaintiff took the deposition of only two managers, both of whom confirmed that work shuts down completely during breaks for groups of employees.

### III.  COMMON ISSUES DO NOT PREDOMINATE AND PLAINTIFF IS NOT TYPICAL

####    A.   The Auto-Deduct Rule Is Not A Common Policy.

There is no common policy that deducted 30 minutes of pay regardless of whether a meal break was taken because Defendant notified employees that supervisors could override the auto-deduction if they did not take a meal break and supervisors could and did commonly override the auto-deduction. Plaintiff has not supplied the Court with any evidence that disputes these facts.

First, class member declarations show that Defendant notified employees that supervisors could override the auto-deduction if they did not take a meal break. Yeni Barbarin ¶ 8 ("I am supposed to let my supervisor know about it so that the Company does not assume that I took it."); Lupe Bandis ¶ 8 ("I know that I can let my supervisor know that I was unable to take a lunch so that the Company does not assume that I took a 30-minute lunch break that day."); Arturo Chavez ¶ 5 ("If there is something wrong with my time records, my supervisor can make changes to my time."); Beatriz Heredia ¶ 9 ("My supervisor told me that she could override Kronos so that it did not 'assume' that I took a 30 minute lunch break."); Javier Robles ¶ 8 (same); Marco Reyes ¶ 4 ("I

---

[2] Defendant produced 24 declarations before the certification hearing and 7 declarations after the last hearing that describe how production employees in each department and/or each work group at each facility in California where putative class members worked during the class period have been provided and take meal breaks, and whether there was an assembly or production line that stopped operating or whether it was otherwise physically impossible for employees to work during a meal break. These declarations also identified the time recording rule that has applied to each production department and/or each work group at each facility in California. Svanfeldt Decl. ¶¶ 2, 3, 6; Exs. 1-6 & 8; Dkt. 79-80 Defendant's Compendium of Evidence.

told my supervisor that I took 30 minutes so she could adjust Kronos so that 60 minutes was not deducted from my time on those days."); Steve Benson ¶ 4 ("I know that my supervisor, Donna Hubis, does something in Kronos so that the system does not assume that I took a 30-minute unpaid lunch break.").

Second, supervisors could and did commonly override the auto-deduction. Rajeev Dhir ¶ 8 ("I have overridden the pay rule for the meal break on numerous occasions"); William Cole ¶ 7 ("I overrode the pay rule"); Susan Bricker ¶ 6 ("I have overridden the pay rule for the hour lunch on several occasions." ); Armando Ablaza ¶¶ 4, 5 (both supervisors and leads can override the auto-deduction); Arteaga ¶ 6;[3] Pereira ¶ 12 ("I have personally modified the time records on multiple occasions to reflect "No Meal."); Barbara Bing ¶ 3 ("Then, a supervisor or I override the pay rule in Kronos that assumes the meal break was taken."); Donna Hubis ¶¶ 7, 8 ("When I apply the adjustment, I can add 30 minutes to the employee's time."); Ron Green ¶ 8 ("He [Dave Stanton] informed me of both times he missed his meal breaks, and I corrected his time in Kronos so there was no meal deduction for those days."); Joy Shenberger ¶ 8 ("[M]anagers have overriden the work rule"). Defendant's corporate witness testified the she personally made an override between 25 and 100 times. Svanfeldt Decl. *¶* 15; Ex. 18 (Pereira Dep. 102:9-12 ("Q: Can you recall a specific instance where you personally have corrected somebody's time record because they missed a meal break? A: Yes. I did it about a month ago with an employee."); 106:8-13 ("Q: . . . I think, you said 25 and 100 instances that you personally have some knowledge of where somebody had their time record corrected because they missed a meal break correct? A: Yes"). )

The Court's certification Order (Dkt. 96) noted that "an auto-deduct class can be certified where Plaintiff presents evidence that the employer did not communicate to employees the fact that auto-deduct could be manually reversed or that the employer did not actually implement such reversals." See Dkt. 96 at 14:1-6. However, the record shows that actual corrections to employees' time sheets were commonplace and not "extremely rare" as the Court was originally led to believe.[4]

---

[3] Defendant produced the declarations of Rajeev Dhir, William Cole, Susan Bricker, Armando Ablaza and Robert Arteaga on May 16, 2017, pursuant to the Court's order regarding discovery.  Plaintiff did not depose any of these manager declarants regarding statements in their declarations that they override the auto-deduction.
[4] As reflected in his declaration, Ron Green recalled that he had recently changed the auto-deduct for one of his electricians David Stanton.  Green ¶ 8.  Defendant was able to produce this one override because local human resources manually searched Stanton's recent time records for the change and produced a screenshot of it.  There is no way for

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

OPP'N TO P'S SUPP. MOT. FOR
CERTIFICATION OF AUTO-DEDUCT
CLASS
Case No. 3:14-cv-04872-EDL

Accordingly, unlike *Harp* and *Dilts*, there is no common policy because 30 minutes was not auto-deducted *regardless of whether a meal break was taken.*

Finally, Plaintiff's contention that Defendant just "now eliminated the auto-deduct policy" is not accurate to the extent it suggests that previously all facilities in California used auto-deduction. They did not. Ontario has not used the auto-deduction since December 2014. Reasons ¶ 7. Carpinteria has never had an auto-deduction for production employees. Blazic #1 ¶ 2. Menlo Park has never applied the auto-deduction to several groups of employees. Pereira ¶¶ 10, 13 ("Depending on which pay rule the managers of the various work groups and departments at the Redwood City and Menlo Park decide to implement, there may or not be a deduction for meal breaks."); Rios ¶ 3 (Menlo Park & Redwood City); Hamby ¶ 3 (Menlo Park). Further, that Defendant changed its policy to "help ensure that [employee] time is tracked accurately and [employees] are paid for the hours [they] work" is not probative of anything without any evidence that employees previously were not taking meal breaks or that the auto-deduct was not overridden.

**B.    Plaintiff's Work Experience Is Not Typical.**

   **1.    Plaintiff Worked Independently And Decided When To Take Meal Breaks.**

Plaintiff is not typical of other employees because he worked independently and scheduled his own meal breaks. Unlike other employees, his break times were not posted. They were not staggered. He was not "swept" off the production floor by his supervisor during breaks. He did not work on a machine that completely shut down during the meal break and he did not work on a production line where employees had to work at the same time to keep work on the line flowing. Rather, Plaintiff testified that he was not required to tell anyone when he left for his meal break and did not have to report to anyone when he returned. Pl's Dep. at 184:18-23; *see also* Green ¶11 ("I gave Dale the flexibility of deciding when to take his breaks—I did not schedule Dale's breaks.").

Plaintiff is not even similarly situated to employees who, like him, reported to Ron Green, worked independently and scheduled their own meal breaks. James Hernandez is, like Plaintiff, an Engineering Technician who is similarly responsible for fixing the machines on the production

Defendant to automatically identify all changes to the auto-deduction for all employees during the class period and print screenshots of them.

floor, he reported to Ron Green and had the "flexibility" to take meal breaks when he wanted. *See* Hernandez ¶ 2. However, Hernandez testified he has never missed a meal or rest break. *Id.* at ¶ 4 ("I understand that a former colleague of mine, Dale Wilson, claims that he missed lunch and rest breaks. That has never happened to me even though we had the same job and reported to the same supervisor."). Hernandez explained that "[i]f I get paged to troubleshoot a machine while I am eating lunch, I am allowed to ignore it until I finish my 30-minute lunch break." He further explained, "I always stop for a 30-minute lunch break, and I have never felt that I had to cut my breaks short due to the demands of my job." *Id*.

### 2. The Manner In Which Auto-Deduction Employees Were Provided And Took Meal Breaks Varies.

Plaintiff has not established that common issues predominate, and that he is typical of auto-deduction employees whose managers took affirmative measures that preclude them from working during meal breaks, and thus who were provided and took meal breaks.

First, Plaintiff's work experience is not typical of auto-deduction employees who worked on machines that stopped during the meal break.[5] Hicks ¶ 2 ("the machines the Operators on my team work on have a stop button, and they stop the machines when it is break time. None of the Operators on my team need to stay at their machines."); Clifford Peterson ¶ 6 ("For everyone in production, operations cease during meal and rest breaks."); Green ¶ 5 ("production ceases" for employees on the production floor); Lester Ensign ¶ 5 ("All of the machines on the production floor have stops."); Pereira Dep. 113:7-16 (employees knew to take a break when "their line stopped."); 121:4-122:13 (machines stop "for them to take their lunch, that's a good thing."); Arteaga ¶ 3 ("The production line completely shuts down during meal and rest breaks for all production employees who work in the Finishing sub-department. Coordinators in this department are responsible for stopping the production line in accordance with a meal and rest break schedule and conducting a 'sweep' of the floor to make sure no employees are left behind during breaks. Because the line stops during meal breaks, there is no reason any production employee on the Finishing line should

---

[5] Plaintiff states that only two declarations state that work stops during meal breaks. Dkt. 115 at 1:23-24; 4:28-5:2. This is not correct. In addition to the deposition testimony of Lynn Pereira, Defendant has produced eight declarations attesting that work stopped during breaks. *See* Declarations of Sharon Hicks, Clifford Peterson, Ron Green, Lester Ensign, Lynn Pereira, Robert Arteaga, Ernie Blazic, and Susan Bricker.

be working during lunch."); Arteaga ¶ 5 (same for the Compounding Plant); Bricker ¶ 4 ("work completely stopped during his breaks.")

Plaintiff argues that the class should be certified because the factory in Menlo Park did not have a *per se* "assembly line." However, Defendant has more facilities than Menlo Park. Defendant produced eight manager and class member declarations from four locations stating that work completely stopped during meal breaks. Hicks ¶ 2 (Redwood City); Peterson ¶ 6 (Redwood City); Green ¶ 5 (Redwood City); Ensign ¶ 5 (Redwood City); Pereira ¶ 15 (Redwood City & Menlo Park); Arteaga ¶ 3 (Menlo Park) ¶ 5; Blazic ¶ 6 (Carpinteria); Bricker ¶ 4 (Ontario).

In addition, Defendant does not contend that employees worked on an assembly line *per se* (*e.g.*, a conveyor belt carrying product). Rather, as explained by Blazic at his deposition, one station is dependent on the output of another station.[6] Regardless, it is Defendant's contention that auto-deduction employees cannot work during meal breaks because they work on machines that are shut off during breaks.[7] As discussed at the discovery hearing, Plaintiff was supposed to verify whether employees worked on machines that "shut down" during meal breaks. *See* Dkt. 109 April 4, 2017 Transcript at 4:18-5:16, 8:5-14, 10:7-11:22. Here, Robert Arteaga's deposition testimony verifies that auto-deduction employees in Menlo Park do in fact work on machines that shut down during meal breaks. Svanfeldt Decl. ¶ 9; Ex. 10 (Arteaga Dep. 80:5-14; 59:12-25; 79:13-17). Arteaga did not admit, as Plaintiff contends, that it was physically possible for employees working on machines that shut down to continue working during breaks. *See* Dkt. 115 6:9-10. Nor did Arteaga testify that employees working on machines have "discretion" to shut down their machines during meal breaks. Dkt. 115 5:17-18. Rather, Arteaga testified that employees are expected to

---

[6] Plaintiff argues that Blazic's deposition testimony shows that the "notion of production lines that shut down completely is a litigation driven chimera" because "[t]here is no evidence of any TE Connectivity employees for whom it was physically impossible for them to work through their lunch break." Dkt. 115 7:27-8:2. That also is not correct. In addition to the various affirmative measures managers take to ensure production employees do not work during meal breaks, Blazic's testimony shows that it was not feasible for any one employee on the assembly line to work during meal breaks. As Blazic explained, **"[i]t's just the line was an assembly line so if you have one station over producing, it's going to flood the next station under-producing, so people had to work together to keep the line flowing**." Svanfeldt Decl. ¶ 7; Ex. 9 (Blazic Dep. 28:3-12; 14:7- 22 (the assembly line had several stations with different steps in the process) (emphasis added); 12:14-21 ("It's a product line that's one of our lower end products and it is easily assemblable so that it could lend itself to a single piece flow"). Further, Plaintiff's attorney did not ask Arteaga and Blazic at their depositions for their definition of "assembly line" or "production line."

[7] *See* Dkt. 109 April 4, 2017 Transcript at 4:24-25 (Ms. Riechert: I'm disputing this sort of assembly line issue. They're working on machines."); 10:7-8 ("she's saying it's not assembly line per se; it's working on machines."); 10:15-16 (the court wanted to know, "So are there any situations with shutdowns, though, actual machine shutdowns?"

1  shut down their machines, and the floors are swept to make sure they leave the floor to take their
2  breaks. *Id. at* Arteaga Dep. 83:10-15; 84:8-18; 86:17-87:17 (it is the expectation that employees
3  shut down their machines "at [the] established times that everybody's been trained on to take their
4  rest breaks and their meal breaks."). The Coordinators and leads then conduct a sweep of the floor
5  to make sure no one is still on the production floor during the meal break. Arteaga ¶ 3.

6  Further, Plaintiff's work experience is not typical of auto-deduction employees who were
7  required to take a meal break in accordance with a posted schedule. Svanfeldt Decl. ¶ 11; Ex. 14
8  (Lopez Dep. 24:22-25:16 ("Q: So your lunch breaks were posted on the wall? A: Yes.")); Reasons
9  ¶ 5; Exh. A ("The Shift Break/Lunch Schedules for the three shifts have been scheduled and posted
10 on the wall" and "the supervisors typically do a 'sweep' of the department to make sure that no
11 employee is hanging back during the lunch and rest breaks."); Javier Robles ¶ 3 ("There's a lunch
12 and rest break schedule posted by the time clock on the facility floor, and I take my breaks
13 according to that schedule."); Heredia ¶ 6; Svanfeldt Decl. ¶ 12; Ex. 15 (Squillace Dep. 31:17-
14 32:23 (they "they gave you a schedule" and it never changed).)

15 Plaintiff's work experience is not typical of auto-deduction employees who could not work
16 during meal breaks because they were told to stop working each day by a supervisor, coordinator or
17 lead. Lopez Dep. 23:23-25:8 (in Quality his supervisor would say "it's lunch time" whereas in
18 Operations his meal break was posted); Dhir ¶ 6 ("Distribution Leads in Menlo Park and Fremont
19 have been responsible for ensuring Shippers, Receivers and Material Handlers on each shift stopped
20 working and took meal and rest breaks pursuant to a set schedule."); Chavez ¶ 4 ("As a Lead, I call
21 out the meal and rest breaks for employees working in receiving."); Ulgado ¶ 5; Peterson ¶ 5.

22 Finally, Plaintiff is not typical of auto-deduction employees who could not work during
23 meal breaks because their breaks were coordinated and staggered by supervisors. Bricker ¶ 4;
24 Chavez ¶ 4; Arteaga ¶¶ 4 & 5; Dhir ¶ 3; Ulgado ¶¶ 4-6; Heredia ¶ 7; Chavez ¶ 4; Eggleston ¶ 5;
25 Peterson ¶ 5; Ulgado ¶ 4; Reasons ¶ 5; Squillace Dep. 54:15-55:6.

26 For the foregoing reasons, Plaintiff's work experience was not typical of any other auto-
27 deduction employee, including James Hernandez who had the same job, the same supervisor and
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

OPP'N TO P'S SUPP. MOT. FOR
CERTIFICATION OF AUTO-DEDUCT
CLASS
Case No. 3:14-cv-04872-EDL

the same flexibility to schedule his own meal breaks.[8] Accordingly, the Court should not certify any portion of the Auto-Deduct Class. *See Ramirez v. United Rentals, Inc.*, 2013 WL 26446648, *4 (N.D. Cal. June 12, 2013) (certification denied where the only common fact was the automatic deduction and "the weight of the evidence show[ed] that break practices did vary significantly from branch to branch").

### C. Plaintiff's Declarants Lack Credibility.

The Court found the evidence Plaintiff submitted with his motion for class certification insufficient to establish the precise scope of the class as to which he is typical and common issues predominate. Dkt. 96 at 18:27-28. In addition, however, the declarations that Plaintiff submitted with his motion do not support class certification.[9]

For example, Plaintiff is not typical of Laura Seda who testified that no one ever prevented her from taking a full 30-minute meal break and that nothing about her job or work demand kept her from taking a full 30 minutes. Seda ¶ 2 ("I told [Plaintiff's] attorney who spoke to me about my first declaration that we took our meal and rest breaks every day. That statement of mine was not put in the first declaration that I signed. I want to clarify that during my employment with Tyco Electronics Corporation, I was provided meal and rest breaks and that I took them.").

Rafaela Onken stated in her declaration that her meal breaks were "interrupted" two to three times a week. However, at deposition in September 2017, Onken testified that she does not recall a time that she was unable to take a meal break of at least 30 minutes:

> Q: [C]an you recall any specific instance, between 2010 and 2015 when you left TE, that you did not get a meal break of at least 30 minutes?
>
> A: **No, I don't recall**.

---

[8] A class of employees who did not work on a line that shut down during meal breaks cannot be certified as Plaintiff proposes. *See* Dkt. 115 at 10:21-23. Plaintiff still has not shown that these employees (which include administration and human resources, etc.) were not provided meal breaks. The manner in which these employees recorded their time and took meal breaks varied. Some employees stopped working at the same time for breaks pursuant to a posted schedule; some employees were reminded to take meal breaks; some employees were told when to stop working by a coordinator, lead or supervisor; and some employees had their meal breaks "staggered" so that another employee could take their place at a machine during breaks. Further, defense counsel informed Plaintiff's attorney on at least four occasions that it was impossible to identify all employees for whom work completely ceased during meal breaks because Defendant does not store this information electronically in any database. Svanfeldt Decl. ¶ 10; Exs. 11-13.

[9] Plaintiff filed nine declarations with his certification motion. However, two of Plaintiff's declarants (David Strachan and Eric Sigmar) are not part of the Auto-Deduct Class and thus should not be considered. Moreover, Strachen testified that he does not recall missing a break. Svanfeldt Decl. ¶13; Ex. 16 (Strachan Dep. 37:13-38:1). Plaintiff has since withdrawn the declaration of a third declarant (William Smith) and his declaration should not be considered.

Svanfeldt Decl. ¶ 5; Ex. 7 (Onken Dep. 92:25-93:4 (emphasis added).) Further, the allegation in her declaration that her meal breaks were "interrupted" have no significance because Onken does not know how long she had been at lunch when her supervisor asked her to return to work (*e.g.*, she could have been at lunch for 30 minutes or longer when her supervisor asked her to return to work). Onken Dep. 62:4-18 ("but I don't recall, like, specifically how long I was there. . . . Again, I don't recall, I wasn't keeping track of the time.").[10]

Plaintiff's experience is not typical of Donald Lopez. Lopez admitted at deposition that Defendant always provided him an opportunity to take a meal break of at least 30 minutes, he always took his meal and rest breaks and, if he ever took a short meal break, it was his own choice and he never told anyone. Lopez Dep. 41:10-19, 42:22-43:2. Lopez's testimony is consistent with his supervisor's recollection that she never received complaints from Lopez that he was not getting a full 30 minute break. Rather, she observed that "Mr. Lopez did not stay behind on the production floor when the entire Operations group stopped working for lunch and rest breaks. His meal breaks were scheduled and posted—just like everyone else." Reasons ¶ 9.

Nor is Plaintiff typical of declarant Michael Epperly. Like Lopez, Epperly testified that he "mostly" took a meal break of at least 30 minutes and that, if he ever took a short break, it was his own choice. Svanfeldt Decl. ¶ 14; Ex. 17 (Epperly Dep. 39:24-41:6). This is consistent with the testimony of his supervisor. Hubis ¶ 10 (Epperly never told Hubis that he was taking short breaks and she had no way of otherwise knowing because they worked in different buildings).

## IV. CONCLUSION

The issue in this case is whether Plaintiff can show a common policy or practice to deny meal breaks. Defendant has submitted extensive evidence showing that auto-deduct employees were provided and took their meal breaks in many different ways. In addition, it is undisputed that Defendant notified employees that supervisors could override the auto-deduct and that supervisors could and did override the auto-deduct. Plaintiff has not supplied the Court with new evidence that will assist it determine the precise scope of the Auto-Deduct Class. Accordingly, Plaintiff's motion should be denied.

---

[10] Further, the only machine that ran during Onken's meal breaks was removed from the facility in 2008, when it was sent offshore. Declaration of Young Kwon ¶ 3 (Onken's supervisor). This was *before* the relevant class period.

1  Dated: October 20, 2017                    MORGAN, LEWIS & BOCKIUS LLP

2

3                                             By _____/s/ *Jennifer Svanfeldt*_____
                                                     Jennifer Svanfeldt
4                                             Attorneys for Defendants
                                              TE CONNECTIVITY NETWORKS, INC.; and
                                              TYCO ELECTRONICS CORPORATION
5

6

7  DB2/ 32068168.5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

OPP'N TO P'S SUPP. MOT. FOR
CERTIFICATION OF AUTO-DEDUCT
CLASS
Case No. 3:14-cv-04872-EDL