UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALE WILSON,<br><br>    Plaintiff,<br><br>v.<br><br>TE CONNECTIVITY NETWORKS, INC., et al.,<br><br>    Defendants. | Case No. 14-cv-04872-EDL<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AWARD OF ATTORNEYS' FEES AND COSTS, AND ENHANCEMENT AWARD** |

Before the Court is the Motion for Final Approval of Class Action Settlement and Award of Attorneys' Fees ("Final Approval Motion"). *See* ECF Nos. 147, 150. Having reviewed the Settlement Agreement and the parties' arguments and papers, the Court **GRANTS** the parties' motions.

**I.    BACKGROUND**

    **A.    Factual and Procedural History**

Plaintiff Dale Wilson ("Plaintiff") was employed as a technician at Redwood City, California, facility of Defendants Tyco Electronics Corporation ("Tyco") and TE Connectivity Networks, Inc. ("TECN") (together, "Defendants") between 1972 and 2013. Wilson Decl., ECF No. 77-12 ¶ 2. Plaintiff contends that due to pressures of work or interruptions by his supervisor, Plaintiff sometimes had an interrupted meal break or missed his meal break completely. Id. at ¶ 4. In an ordinary week, Plaintiff did not get a full meal break on three out of five days. Id. Because of Defendants' auto-deduct policy, Defendants did not compensate Plaintiff for these missed or interrupted meal breaks. Id.

On October 1, 2014, Plaintiff filed a class action lawsuit against Defendants in the Superior Court for the State of California, County of San Mateo, Case No. CIV530714 alleging

causes of action for: (1) Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226.7, 512, and 1198); (2) Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226.7, and 1198); (3) Failure to Pay Hourly Wages (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1997.1, and 1198); (4) Failure to Provide Accurate Written Wage Statements (Lab. Code § 226(a)); (5) Failure to Timely Pay All Final Wages (Lab. Code §§ 201-203); (6) Unfair Competition (Bus. & Prof. Code §§ 17200, et seq.); and (7) Civil Penalties (Lab. Code §§ 2698, et seq.). Compl., ECF No. 1, Ex. A. The Complaint seeks recovery of wages on behalf of Plaintiff and on behalf of a class of "[a]ll persons employed by Defendants in hourly or non-exempt positions in California from October 1, 2010, through the date of class certification, who had a ½ hour deducted from their paychecks for a meal period." Compl. ¶ 11.

Defendants contend that they have complied with all state wage and hour laws and do not believe that any liability to Plaintiff or Class Members exists, or that Plaintiff or Class Members are entitled to any recovery. Ans., ECF No. 1, Ex. B. According to Defendants, Tyco has, throughout the class period, had a meal and rest policy that provides and permits meal and rest breaks in accordance with California law. Pereira Decl., ECF No. 79-5 ¶ 4.

On October 31, 2014, Defendants filed its answer, ECF No. 1-2, and then removed the action to the Northern District of California under the Class Action Fairness Act ("CAFA") on November 3, 2014, ECF No. 1. On January 22, 2015, Plaintiff filed a motion to remand the case to state court arguing that Defendants had not proved by a preponderance of the evidence that the amount in controversy exceeded $5,000,000 as required by the CAFA. ECF No. 17. On March 26, 2015, the Court denied Plaintiff's motion to remand without prejudice, noting that discovery might reveal that there is a good faith reason to remand this case. ECF No. 31. Following certain discovery, on August 9, 2016, Plaintiff filed a renewed Motion to Remand, ECF No. 66, which the Court denied on October 3, 2016. ECF No. 76.

Plaintiff and Defendants both served and responded to several sets of written discovery responses. *See* ECF Nos. 99-102. The Parties exchanged extensive data, information, and documents concerning the claims, defenses, and alleged damages at issue in the Action, including production of time records for a sample of Class Members, meal period premium data for a sample

of Class Members, Plaintiff's wage statements and personnel file and relevant policy documents, and other various Class Member data. Defendants deposed Plaintiff Dale Wilson on October 15, 2015. ECF No. 147-1 ¶ 10. Plaintiff interviewed putative class members to investigate their experiences as Tyco's employees. ECF No. 147-1 ¶ 12. Plaintiff deposed Lynne Pereira as an individual and as Defendants' Person Most Knowledgeable on August 23, 2016. Setareh Decl., ECF No. 147-1 ¶ 13.

On October 11, 2016, Plaintiff moved for class certification. Plaintiff's motion sought to certify three proposed subclasses: (1) meal break class; (2) rest break class; and (3) auto-deduct class. On February 9, 2017, the Court granted in part Plaintiff's motion for class certification. ECF No. 96. The Court denied Plaintiff's motion for class certification as to the meal and rest break classes because individual inquiries predominated. Id. On January 25, 2018, following supplemental briefing by the parties, the Court certified the auto-deduct class. ECF No. 118. On February 8, 2018, Defendants filed a petition for permission to appeal the district court's class certification order regarding the auto-deduct class with the Ninth Circuit, No. 18-80018. Defendants' request for **immediate** appeal was withdrawn on May 11, 2018, when the parties agreed to settle the case. Setareh Decl., ¶ 22.

### B. Settlement

Following at least two mediation sessions with a neutral mediator, the parties agreed to settle this action for a total amount of $4,960,000 for 1,300 class members. Setareh Decl. ¶¶ 25-26. The proposed settlement amount includes (a) payments to Class Members (an average of approximately $2,450.87); (b) Class Counsel's attorneys' fees and litigation costs (not to exceed $1,653,333.30 in fees and not to exceed $50,000 in costs), (c) settlement administration costs (not to exceed $45,000), (d) enhancement award to Plaintiff (not to exceed $7,000), and (e) payment to the California Labor & Workforce Development Agency ("LWDA") to resolve the claims arising under California's Private Attorney General Act ($50,000). Setareh Decl. ¶ 31; Settlement Agreement, ECF No. 136-1 ¶ 56. After deduction from the total settlement amount of attorneys' fees and costs, the enhancement award to Plaintiff, the payment to the LWDA, and the costs of administering the settlement, there will be a net settlement amount of at least $3,167,166.70.

3

The Proposed Class consists of, "[a]ll current and former non-exempt employees of Tyco employed in the State of California between October 1, 2010, through and including May 15, 2017, who had a half hour deducted for a meal period from their recorded hours as part of an auto-deduct policy." Settlement Agreement ¶ 6.

**C. Notice**

Simpluris was appointed by the Court as Settlement Administrator to administer the Settlement in accordance with the terms of the Settlement Agreement. Salinas Decl., ECF No. 147-3 ¶ 9. The Class Notice advised Class Members of their right to opt out from the Settlement, object to the Settlement, or do nothing, and the implications of each such action. See Class Notices, ECF Nos. 147-4, 147-5. The Class Notice advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information. Id. The Class Notice was pre-printed with the name and address of the Class Member, work weeks used to calculate his/her estimated Settlement share, and instructions for challenging the work weeks. Id. On January 30, 2019, Notice Packets were mailed via First Class Mail to 1,278 Class Members contained in the Class List. Salinas Decl. ¶ 7. For Notice Packets returned by the USPS as undeliverable and without a forwarding address, Simpluris performed an advanced address search (i.e., skip trace) by using a reputable research tool called Accurint and promptly mailed Notice Packets to updated addresses. Salinas Decl. ¶ 5. On March 28, 2019, counsel for Defendants provided Simpluris with 22 additional Class Members. Supp. Salinas Decl., ECF No. 150-1 ¶ 7. Ultimately, nine Notices were undeliverable because Simpluris was unable to locate a current address. Id. at ¶ 4.

Simpluris also established and is maintaining a settlement website (www.TycoSettlement.com) to provide information to the Class Members. Salinas Decl. ¶ 9. The website was operational on January 30, 2019, and is accessible 24 hours a day, 7 days a week. Id.

As of June 14, 2019, Simpluris (1) had received no requests for exclusion from the Settlement; (2) had accepted 6 valid disputes with none others pending; and (3) had not received any objections.

### D. Preliminary Approval and Request for Final Approval

On December 26, 2018, this Court granted Plaintiffs' motion for preliminary approval of the parties' proposed Settlement Agreement, conditioned on Plaintiff's reducing the maximum service enhancement to the Class Representative from $10,000 to $7,000. ECF No. 142. The Court also issued an order preliminarily conditionally certifying the class for purposes of settlement; appointing Class Representative, Class Counsel, and Settlement Administrator; approving the notice of class settlement and request for exclusion form; and setting the hearing on final approval of the settlement before this Court. ECF No. 142.

On March 1, 2019, Plaintiff filed an unopposed motion for attorneys' fees, ECF No. 147, and on June 17, 2019, Plaintiff filed an unopposed motion for final approval of the Settlement Agreement, ECF No. 150. A fairness hearing was set and heard on September 3, 2019.

## II. LEGAL STANDARD

A class action may not be settled without court approval. Fed.R.Civ.P. 23(e). "If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Id. When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir.2003). "[J]udges have the responsibility of ensuring fairness to all members of the class presented for certification." Id. The law favors the compromise and settlement of class action suits. See Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 576 (9th Cir.2004). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir.1998).

Final approval of a case where settlement is reached prior to class certification requires two inquiries. First, the district court must assess whether a class exists. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997) ("But other specifications of [Rule 23] – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened attention in the settlement context. Such attention is of vital importance, for a

court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."). Second, the district court must consider whether a proposed settlement is "fair, reasonable and adequate." See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998) (recognizing that "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness. . . .").

## III. DISCUSSION

### A. Class Certification

In order to approve a class action settlement, the Court must make a finding that a class can be certified. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019-22 (9th Cir. 1998).

#### 1. Rule 23(a)

Class certification requires that: (1) the class be so numerous that joinder of all members individually is 'impracticable;' (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representative must be typical of the claims or defenses of the class; and (4) the person representing the class must be able fairly and adequately to protect the interests of all members of the class. See Fed. R. Civ. P. 23(a); Staton v. Boeing, 327 F.3d 938, 953 (9th Cir. 2003).

Here, the Court conditionally certified the settlement class when it granted preliminary approval of the proposed Settlement. ECF No. 142 ¶ 4. Numerosity is satisfied here where the parties have identified 1,278 class members. Setareh Decl., ECF No. 147-1 ¶ 74. Commonality and typicality are satisfied based the class's shared status as non-exempt employees of Defendants and shared claims that Defendants improperly deducted time from their recorded hours as part of an auto-deduct policy. Id. at ¶¶ 75-76. Finally, adequacy of representation is satisfied as well. Plaintiff meets the requirements to be named class representative, since he shares the same interests in securing relief for the claims in this case as every other member of the proposed settlement class and there is no evidence of any conflict of interest. Wilson Decl., ECF No. 147-8 ¶¶ 1-7; Setareh Decl., ¶¶ 4, 77. Plaintiff has demonstrated his continued willingness to vigorously prosecute this case and has regularly consulted with his counsel, has aided in the prosecution of

6

the litigation, has reviewed documents and the proposed settlement, and has indicated his desire to continue protecting the interests of the class through settlement or continued litigation. Id. Class Counsel law firm Setareh Law Group LLP has extensive experience in employment and labor litigation and has been appointed class counsel in similar cases. Setareh Decl. ¶ 42. Therefore, the Court is satisfied that Plaintiff and Class Counsel will adequately represent the members of the Settlement Class and their interests.

### 2. Rule 23(b)

In addition to meeting the conditions imposed by Rule 23(a), parties seeking class certification must also show that the action is maintainable under Federal Rule of Civil Procedure 23(b). Rule 23(b)(3) requires that questions of law or fact common to class members predominate over questions affecting only individual members and **that** a class action **be** superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b); Hanlon v. Chrysler, 150 F.3d 1011, 1022 (9th Cir. 1998). Here, the predominance factor is satisfied because the proposed class is sufficiently cohesive to warrant adjudication by representation because all of the claims relate to a limited set of Defendants' employment practices, in particular Defendants' alleged improper deduction of time for meal periods from their employees' recorded hours as part of an auto-deduct policy. See Setareh Decl. ¶ 76. Additionally, the superiority factor is satisfied because the settlement class is comprised of 1,278 persons and, if each were to pursue their claims against Defendants individually, they would each need to provide nearly the same legal and factual arguments and evidence. Id. at ¶ 78. The result would be hundreds of trials at enormous expense to the proposed class members and Defendants, as well as a burden on the courts. Individual recoveries for class members would likely be too small to be worth pursuing. See Chamberlan v. Ford Motor Co., 223 F.R.D. 524, 527 (N.D. Cal. 2004). For these reasons, the Court finds that the class action is the superior method of resolving the claims of all the members.

Accordingly, the settlement class is certified.

### B. Adequacy of Notice

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances,

including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2)(B). Such notice must "clearly and concisely state in plain, easily understood language," the nature of the action, the class definition, and class members' right to exclude themselves from the class, among other things. Fed.R.Civ.P. 23(c)(2)(B). Further, before granting final approval to a proposed class settlement, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed.R.Civ.P. 23(e)(1). While Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each individual actually receive notice. Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir.1994); see also Rannis v. Recchia, 380 Fed.Appx. 646, 650 (9th Cir.2010).

Here, the Court approved the notice plan set forth in the Settlement Agreement. ECF No. 142 ¶ 3; Settlement Agreement ¶ 72. Following the approved notice plan, the Settlement Administrator Simpluris sent notice packets to 1,300 potential class members. Supp. Salinas Decl. ¶ 8. For any packets received back from the Postal Service with undeliverable addresses, Simpluris performed address searches through a third-party locator service to re-mail the notice packets to updated addresses. Id. Additionally, the settlement website allowed class members to access information online. Id. at ¶ 9. Ultimately, only nine notices were undeliverable because Simpluris was unable to locate a current address. Supp. Salinas Decl. ¶ 4. The opt-out deadline and the objection filing postmark deadline were both March 18, 2019. Notice of Class Action Settlement, ECF No. 147-3, Ex. A at 4. Simpluris received no timely opt-out requests or objections to the settlement. Supp. Salinas Decl. ¶¶ 5, 7.

Accordingly, the notice given here satisfied Rule 23.

### C. Fairness of the Settlement

Once the class action passes certification, before a settlement that would bind class members can be approved, the court must hold a hearing and find that the disposition is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, the Court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, adequate, free from collusion and consistent with Plaintiff's fiduciary obligations to the class. Hanlon, 150 F.3d at 1127; see also Schwarzer, et al., Federal Civil

Procedure Before Trial, at § 10-118 (Rutter Group, 2010). Further, "[a]ssessing a settlement proposal require[s] the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Hanlon at 1126 (quoting Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation marks omitted)).

Settlement approval that takes place prior to formal class certification must satisfy heightened scrutiny: "[t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court-designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)." Hanlon, 150 F.3d at 1026. District court review of class action settlements "includes not only consideration of whether there was *actual* fraud, overreaching or collusion but, as well, substantive consideration of whether the terms of the decree are 'fair, reasonable and adequate to all concerned." Staton, 327 F.3d at 960 (quoting Officers for Justice v. CCSF, 688 F.2d 615, 625 (9th Cir. 1982)).

Here, the factors weigh in favor of finding that the settlement is fair, adequate, and reasonable. On December 15, 2015, the parties engaged in Court-ordered mediation. Setareh Decl. ¶ 23. On April 26, 2018, the parties participated in a good-faith, arms-length negotiation presided over by mediator Steven Rottman. Id. at ¶ 25. The settlement was negotiated by experienced counsel in a case in which there were complex legal and factual issues, and it was not clear that Plaintiff would prevail. Id. at ¶ 35. Further, Plaintiff's counsel did not reach an agreement to settle the case until sufficient information was collected to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation. See id. at ¶ 34; see also Linney v. Cellular Alaska P'ship, 1997 WL 450064, at *5 (N.D. Cal. Jul. 18, 1997) (Jensen, J) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after

9

relevant discovery had taken place create a presumption that the agreement is fair."). Based on the above analysis, the settlement is fair, adequate, and reasonable.

Accordingly, the Court grants final approval of the class action settlement.

## IV. MOTION FOR FEES, COSTS, AND INCENTIVE AWARDS

### A. Attorneys' Fees Award to Class Counsel

An award of attorneys' fees must be reasonable, even if the parties have already agreed to an amount. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir.2011). Courts have discretion to award attorneys' fees to a prevailing plaintiff if: "(1) fee-shifting is expressly authorized by the governing statute; (2) the opponents acted in bad faith or willfully violated a court order; or (3) the successful litigants have created a common fund for recovery or extended a substantial benefit to a class." Id. There are two separate methods for determining attorneys' fees, depending on the case: (1) common fund doctrine; and (2) lodestar calculation. As stated in Hanlon:

> In "common-fund" cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method. Id. at 1295. The percentage method means that the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee. Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir.1989). This circuit has established 25% of the common fund as a benchmark award for attorney fees. Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir.1990) . . . .
>
> In employment, civil rights and other injunctive relief class actions, courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof. The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate. Blum v. Stenson, 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The hours expended and the rate should be supported by adequate documentation and other evidence; thus, attorneys working on cases where a lodestar may be employed should keep records and time sheets documenting their work and time spent. The resulting figure may be adjusted upward or downward to account for several factors

> including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment. Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.1975).

Hanlon, 150 F.3d at 1029.

Under either method, the requested fees are fair and reasonable. The common fund doctrine applies if "(1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefitting." Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 271 (9th Cir. 1989) (quoting In re Hill, 775 F.2d 1037, 1040 (9th Cir.1985)) (internal quotation marks omitted); see also Staton, 327 F.3d at 973. These criteria are met where "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum [settlement] recovered on his behalf." Paul, Johnson, 886 F.2d at 271 (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478(1980)) (internal quotation marks omitted). Here, these three factors are met: the class is identified, the benefits can be accurately traced because they are monetary payments directly to class members, and the fee can be shifted with exactitude because counsel is claiming a specific dollar amount that corresponds to a specific percentage of the fund.

There is also a 25% benchmark for the reasonableness of attorneys' fees in "common fund" cases. Hanlon,150 F.3d at 1029. However, the Ninth Circuit has also stated that "the 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all the circumstances of the case." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002); In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 942 (9th Cir. 2011) (noting that courts must supply an "adequate explanation in the record of any 'special circumstances' justifying a departure"). Courts apply a five-part test in calculating a reasonable percentage in common fund cases: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases," In re Omnivision Technologies, Inc., 2007 WL 4293467 at *9 (N.D. Cal. 2007) (Conti, J); see also Vizcaino v. Microsoft Corp.,

290 F.3d 1043, 1048-50 (9th Cir. 2002); Serrano v. Priest, 20 Cal. 3d 25, 49 (1977). Courts may also consider the reaction of class members to the proposed attorney fees and the difference between the requested percentage fee and counsel's fees calculated under the lodestar method. Knight v. Red Door Salons, Inc., 2009 WL 248367, *7 (N.D. Cal. 2009) (Conti, J).

Class Counsel contends that 34% is warranted here because the Omnivision factors favor the requested fees in this case. First, the average payout for each class member will be approximately $2,450.87, and there is value in the fact that each class member will receive a distribution now rather than after further litigation and appeals, which would likely achieve a similar or even less favorable result. See Salinas Decl. ¶ 13. With regard to the risks involved, the result achieved was not certain and depended on a disputed legal issue regarding whether the employees involved were in fact non-exempt employees. See Setareh Decl. ¶¶ 28, 32, 35, 38, 39. Class Counsel has extensive experience in wage and hour class actions. Id. at ¶ 66. Class Counsel also incurred actual costs of $41,696.69. Id. at ¶ 63. Similar fee percentages have been awarded in this district in other overtime employment actions. See, e.g., Van Vranken v. Atlantic Richfield Company, 901 F. Supp. 294 (N.D. Cal. 1995) (stating that most cases where 30-50 percent was awarded involved "smaller" settlement funds of under $10 million). Finally, the amount of fees requested in the fee award was included in the Notice to class members. ECF No. 147-4 at 2-3. As indicated above, as of June 14, 2019, no class member has objected. Supp. Salinas Decl. ¶ 7.

Class Counsel's firm, Setareh Law Group LLP, expended 1,012.7 hours on this litigation, at rates that ranged from $750/hour (Mr. Setareh) to $375/hour. ECF No. 147 at 16; see also Setareh Decl. ¶ 2. In addition, another experienced counsel, Stanley Saltzman of Marlin & Saltzman, spent 52.25 hours on this litigation at an hourly rate of $825. Id. at ¶ 54; see also Saltzman Decl., ECF No. 147-7 ¶ 8. The total lodestar amount would be $694,323.75. Setareh Decl. ¶ 55. It appears from counsel's declarations that the following activities account for much of that time: filing a complaint and first amended complaint, appearing at a case management conference, filing motions for remand, significant motion practice as well as hearing preparation for class certification, addressing Defendants' petition for immediate appeal, preparing for and attending mediation, preparing for and defending Plaintiff's deposition, further preparation for

attendance at mediation, motions to compel discovery, finalizing the settlement and filing class settlement motions. Setareh Decl. ¶¶ 46-51.

The 34% award (based on common fund percentage) is fair and reasonable in this case. In addition, even though the lodestar method is not generally used in common fund cases, it can be used as adjusted by an appropriate multiplier as a cross-check method on the percentage method:

> Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award. Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted. Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award.

Vizcaino, 290 F.3d at 1050. In Vizcaino, the Ninth Circuit noted that most multipliers range between 1.0 and 4.0. 290 F.3d at 1053-54. Here, a multiplier of 2.38 yields almost exactly the amount of the requested fee award, which suggests that approving the award is reasonable under the lodestar method, as well.

Accordingly, the Court grants Plaintiff's unopposed motion for attorneys' fees and costs.

### B. Enhancement to Named Plaintiff

Regarding the enhancement award to the named Plaintiff, the agreement provides for an enhancement award of $7,000. The Court must evaluate the award individually to detect excessive payments. Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003); In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000) (approving incentive award of $5,000 almost two decades ago to two plaintiff representatives of 5,400 potential class members in $1.75 million settlement, where incentive payment constituted only 0.56% of the settlement); Alberto v. GMRI, Inc., 2008 WL 2561106, 11-13 (E.D. Cal. June 24, 2008) (requiring the parties to present evidence showing the named plaintiff's substantial efforts taken as class representative to justify the discrepancy between her $5,000 award, constituting 0.71% of the settlement, and the $24.17 that each class member was expected to receive); see also Rodriguez v. West Publishing Corp., 563

F.3d 948, 958 (9th Cir. 2009) (noting that incentive awards are fairly typical in class action cases). To assess whether an incentive payment is excessive, district courts balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." Staton, 327 F.3d at 977.

Here, there is only one named plaintiff. He submitted a declaration describing the efforts that he undertook as the class representative: "(i) retaining experienced counsel, (ii) providing them with extensive information about my work history with Defendants and Defendants' policies and practices; (iii) gathering documents as instructed by my attorneys, (iv) responding to written discovery responses; (v) being deposed; (vi) assisting my counsel in preparing the motion for class certification; (vii) assisting my counsel in preparing for settlement negotiations, (viii) traveling to and attending the full-day mediation in this case, (ix) time spent being actively involved in the settlement process to ensure a fair result for the Settlement Class as a whole, and (x) time spent carefully reviewing the Settlement, and other case-related documents on my own and with my counsel to make sure that the Settlement and other work my attorneys performed are in the best interests of the Settlement Class Members." ECF No. 147-8 ¶ 8.

Accordingly, the Court finds that the enhancement award of $7,000 is not excessive. The Court grants the request for an enhancement award of $7,000.

V. **CONCLUSION**

Based on the foregoing, the Court **GRANTS** Plaintiff's Motion for Final Approval of Class Action Settlement and **GRANTS** Plaintiff's Motion for Attorneys' Fees and Costs. The Court awards $1,653,333.30 in fees and $50,000 in costs, in addition to $7,000 to Class Representative in incentive award.

**IT IS SO ORDERED.**

Dated: September 5, 2019

						ELIZABETH D. LAPORTE
						United States Magistrate Judge

14